**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**Alexander James TURNER, Appellant.**

**No. 15964.**

United States Court of Appeals
Third Circuit.

Argued Jan. 29, 1968.

Decided July 12, 1968.

On Rehearing April 11, 1969.

Daniel H. Greenberg, New York City, for appellant.

John E. Stout, Asst. U. S. Atty., St. Thomas, V. I. (Almeric L. Christian, U. S. Atty., Charlotte Amalie, St. Thomas, V. I., on the brief), for appellee.

Before KALODNER, STALEY and ALDRICH,* Circuit Judges.

OPINION OF THE COURT

ALDRICH, Circuit Judge.

The defendant Turner was charged in two counts under 14 Virgin Islands Code § 834(2), with defrauding storekeepers in St. Thomas, or the American Express Co., by the unauthorized use of a credit card issued by the latter to one Cain. Briefly, the government's evidence showed that Cain used his American Express card in San Juan, Puerto Rico on February 26, and later discovered it to be missing. He immediately notified the company. Thereafter, but before American Express had sent out its next bulletin to dealers, defendant, in St. Thomas, using Cain's card and representing himself to be Cain, bought a $600 watch on March 10, and $200 in perfumery on March 11. The following day he sought to buy jewelry in Puerto Rico. Evidently having overheard the

* Of the First Circuit, sitting by designation.

jeweler telephone American Express before completing the sale, defendant ran out the door. The storekeeper pursued, and a policeman effected the capture. Subsequently an abandoned Hertz car was discovered containing a suitcase which opened by a key (a by no means simple key) found in the possession of the defendant. The car had been rented in the name of another credit card holder, whose card was shown to have been in the possession of an individual who had accompanied the defendant when he made his purchases in St. Thomas. In the suitcase were goods corresponding to defendant's St. Thomas purchases, and paper bags from one of the stores. Defendant offered no defense, and was found guilty.

On this appeal defendant complains of the government's opening, of a portion of the charge, and of the inadequacy of his trial representation. We will deal with the last point first.

Except in one particular, our examination of the record evokes no serious criticism of counsel's conduct. Only too clearly, the government's case gave him nothing to work with. Counsel is not to be condemned for not tilting with windmills. However, he did fail to make a number of reasonably possible objections. For reasons peculiar to this case we overlook these omissions, and consider these now-asserted errors.

■ The government's opening was not what, in our opinion, an opening should be. The purpose of an opening is to give the broad outlines of the case to enable the jury to comprehend it. It is not to poison the jury's mind against the defendant, and it is certainly not to recite items of highly questionable evidence. In the present case, having formally complained against the defendant for making two charges on the credit card totalling $800, the government in its opening informed the jury that, using Cain's card, the defendant "made various charges in various parts of the United States, Puerto Rico, and the Virgin Islands * * *. [T]here was a total of

more than $4,000 in fraudulent charges * * *. [I]n the Virgin Islands alone there was a total of nine charges totalling $2,244.27."

The government claims that such evidence was admissible as proof of a course of conduct to show wrongful intent. We have considerable question; this would not seem a case of ambiguity. Cf. United States v. Kirkpatrick, 6 Cir., 1966, 361 F. 2d 866; United States v. Prince, 3 Cir., 1959, 264 F.2d 850. If defendant was the user of a credit card that did not belong to him, his wrongful intent would seem inevitable. Hence reference to other occasions cast no additional light, but would merely serve to prejudice the jury by indicating other crimes. Government of the Virgin Islands v. Oliver, 3 Cir., 1966, 360 F.2d 297. But quite apart from this, admissibility of the other occasions presupposes that defendant was the one who made the other purchases. All the government offered to support its opening was that, on the American Express records, charges in the amount asserted had been made against the card. Instead of this evidence adding probative weight to the case against defendant, it assumed, rather than proved, that defendant had been the one to use the card, the essential question at issue.

During oral argument government counsel frankly conceded what we had already inferred, that these other charges had not been proceeded upon because the identification evidence with regard to them was unsatisfactory. If it could not be proved that defendant effected these charges, they had no place in the case. The court's exclusion of the government offer of proof of other unauthorized charges against the card was clearly correct, and by the same token the government's opening was unsupported, and hence improper. Furthermore, the government had good reason to know it was unsupported.

■ Only with great hesitation do we find errors of this magnitude to be nonprejudicial. The court's exclusion of the proffered evidence in the presence of the

jury and its general charge not to regard statements of counsel as evidence, helped, but it may be questioned whether this was enough to offset the effect of the opening. A jury may not easily forget or overlook what it has been told by a government representative, particularly in the absence of more specific directions to do so. However, in this case we find the government's evidence against this defendant so overwhelming that it is difficult to see how an unfulfilled statement that there was more could have made any difference. On the evidence introduced we cannot see how any jury could have failed to find the defendant guilty. Under these exceptional circumstances, we will not hold the over-ambitious opening to have been prejudicial error. See Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, citing Fitter v. United States, 2 Cir., 1919, 258 F. 567; cf. Chapman v. State of California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

■ The matter of the charge may be briefly dealt with. The paragraph now objected to was at best ambiguous and confusing. At worst, it was inaccurate. Much of it was not relevant to the case however interpreted. Nonetheless, the charge must be viewed as a whole. Harris v. United States, 1 Cir., 1966, 367 F.2d 633, cert. denied 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787. So viewed, we think the issues were adequately and properly presented. The dissent's criticism of the charge really goes to the assumption that unless defendant knew he was violating some statute he may have thought he was guilty of no crime. We find it inconceivable that defendant thought he was personally going to pay for the goods himself. While the dissent speaks of a time interval, it should make no difference whether defendant stole the card directly from Cain, was far down in the chain of "title," or was a mere finder, or who he thought was ultimately going to be the loser; in no circumstance would he not be larcenous minded.

We mention briefly certain other matters considered important by the dissent. There was nothing singular or improbable about the hearsay evidence. Defendant was represented by experienced counsel and we have no reason to assume that he believed it untrue, or to be otherwise unprovable. Our concession that we would not invoke the plain error rule does not go to the extent that it need not appear that the error was prejudicial. Nor can we agree that the fact defendant refused to make an in custody statement was "expressly solicited" in the sense suggested. Rather, the witness was asked whether, when interviewed, the defendant made a statement, to which the witness replied that he did not, except to admit his identity. This last was certainly a relevant piece of evidence. While it might have been better to have asked only for the affirmative admission, we see no harm in the witness having volunteered that when he asked if the defendant had anything to say he prefaced it with the remark that he had told the defendant he did not need to answer. Rather, this took the sting out of it.

If the purpose of reversal is to criticize prosecuting counsel for his opening, certainly criticism is due. We believe, however, that the test must be some suggestion of a possible miscarriage of justice, and we see none.

■ We do have one possible reservation. A ten year sentence for larceny of merchandise worth under $1000, absent some special considerations, seems to us high. While we have no power to review sentences and have not seen the presentence report, we are led to wonder whether the evidence the government was unable to develop at the trial found itself in the sentencing proceedings or the judge's mind. cf. LeBlanc v. United States, 1 Cir., 1968, 391 F.2d 916. We suggest that within sixty days of receipt of mandate the defendant move for a reduction of sentence so that the district court may have an opportunity to reconsider this matter.

Affirmed.

KALODNER, Circuit Judge (dissenting).

The defendant in the instant case was sentenced to ten years of imprisonment on each of the two counts of the Information, the terms to run concurrently. This sentence cannot be regarded as other than harsh, indeed, extreme. Ordinarily, a sentence within the maximum limits (and ten years is the maximum on each count under the Virgin Islands' Code) is within the discretion of the sentencing judge. But in weighing whether error is prejudicial, a harsh sentence may "turn the balance". United States v. Hoffman, 137 F.2d 416, 422 (C.A. 2, 1943); see also, United States v. Trypuc, 136 F.2d 900, 902 (C.A. 2, 1943). Such a judgment of sentence should be affirmed only when it can be said that "the whole trial was conducted with the most scrupulous exactness". Amendola v. United States, 17 F.2d 529, 530 (C.A. 2, 1927); United States v. Pagano, 224 F.2d 682, 683 (C.A. 2, 1955), cert. den. 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 779.

The majority makes an attempt to vindicate the trial procedure in the instant case. The affirmance is based on the view of the majority (which I do not share) that on the evidence no reasonable jury could have reached any other result notwithstanding the obvious prejudice, only a single example of which, namely, the prosecuting attorney's opening speech, later dealt with, is specifically discussed by the majority.

I put to one side the troublesome question, how far an appellate court should allow its own appraisal of the guilt of the defendant to obviate recognized errors below. A delicate balance, at least, must be maintained. For it is not our judgment of guilt which satisfies a defendant's right, however one-sided the evidence may be against him, to have his guilt determined by a jury.

Two examples of prejudice, other than the prosecutor's opening speech, preliminarily command attention.

First, all of the testimony with respect to an abandoned vehicle was the rankest hearsay. The harm, in my opinion, is that the conduct so attributed to the defendant and his alleged friend superficially reflects the behavior of one who possesses valuable property which he has not paid for or which he desires to be rid of because possession carries its own incrimination. Such evidence would certainly affect the frame of mind of the jury in weighing all the admissible evidence.

Second, an FBI agent was permitted to testify that he visited the defendant while the latter was in custody, warned him of his constitutional rights, including his right to counsel, and requested him to make a statement, which the defendant refused to do. This testimony was expressly solicited by the prosecuting attorney, who undoubtedly knew what the agent's answer would be. Perhaps the explanation is that counsel, as well as the Court, believed that such evidence was relevant, and comment could be made. We have set that error right. Government of the Virgin Islands v. Bell, 392 F.2d 207 (C.A.3, decided March 27, 1968).

The stated testimony is a significant prejudicial factor which must be weighed in the balance. We cannot gainsay the common inference that a person who is accused of crimes but whose tongue clings to the roof of his mouth, has guilty reason to keep silent.

In United States of America ex rel. Staino v. Brierly, 387 F.2d 597 (C.A. 3, decided December 29, 1967), we held that "the use of a so-called 'tacit admission' " of guilt, arising from the failure of a defendant to deny an accusation of guilt or to speak out with reference to such an accusation, rendered a conviction "essentially unfair and, therefore, violative of the 14th Amendment".

When we add the prejudicial speech of the prosecuting attorney, it seems to me that there was lacking here a fair and impartial trial by jury, because by this speech the jury was pre-conditioned and pre-disposed to find the defendant guilty.

In his opening speech the prosecuting attorney said in part:

"May it please the Court, Mr. Conklin, ladies and gentlemen—as you may or may not know already in your experience as jurors, an opening statement is merely a statement by counsel with respect to what we expect to prove through the testimony and the evidence. We have various witnesses here today that we expect will prove to you these general facts. I say general because I will not go into detail. But, I would like to outline to you basically what this is all about before we start adducing evidence from the witness stand so that you will be better able to follow the evidence.

"On February 25, 1965, a gentleman from Brooklyn, New York, Mr. Martin Cain, was in a dining room in the Sheraton Hotel in San Juan. And on that occasion he used his American Express Company credit card that rightfully belonged to him and had been issued to him by the American Express Company which he used on many previous occasions; and he does not remember receiving that card back that night. Mr. Cain was on a trip through the Caribbean and subsequently, upon reaching Curacao, he realized that he no longer had his American Express Company card; at which time he immediately advised the American Express Company in New York, and subsequently the American Express Company put out bulletins to all of their retailers who honor American Express Company cards and advised them that this particular card was either lost or stolen. However, before the bulletin reached the hands of the retailers all over the world, the defendant—Alexander James Turner—somehow turned up with Mr. Cain's card; and in the interim, before the retailers were advised, *he made various charges in various parts of the United States, Puerto Rico, and the Virgin Islands with this American Express Company card representing himself to the retailers as Martin Cain.*

"And the evidence will show that Alexander James Turner travelled from Puerto Rico on March 10, 1965 in the company of a confederate by the name of Meliah Bell *who also had a stolen or lost American Express card issued in the name of Meyer Odence; and the evidence will show to you that Meliah Bell and the defendant, Alexander James Turner, started at one end of Main Street and charged all the way down Main Street. Specifically,* in this information we have Mr. Turner charged with making a charge at Lescale on March 11, 1965 for $193.30. And I should interject here that Mr. Turner and Mr. Bell came here on March 10 and with their shopping bags full, they went back to San Juan on March 10 and came back here on March 11 and repeated the same routine in different stores. So, we have two dates involved—March 10 and March 11, 1965." (emphasis supplied)

It is a great deal easier to reach the conclusion that the defendant is guilty if one is told beforehand, as this jury was, in the prosecutor's opening speech, that the defendant had run up a large bill on Mr. Cain's card by making many purchases *"in various parts of the United States, Puerto Rico, and the Virgin Islands".* (emphasis supplied) Indeed, the prosecutor, with the lack of restraint of one who, free of testimonial oath, put the defendant and another (Mr. Bell, whose conviction we have reversed for other reasons) in a conjoint scheme, and declared that they "started at one end of Main Street and charged all the way down Main Street". The prosecutor then knew he could offer no such evidence.

Realistically speaking, the prosecutor's opening speech was not merely harmful because it referred to "other crimes". It was particularly prejudicial because it was precisely the kind of information which would influence the jury to believe that the two incidents involved in the information were but part of a series of criminal adventures of the defendant and Bell to bilk the local merchants or Mr. Cain or the American Express Company.

And it stated circumstances which would obviate for the jury the ultimate question in the case. We have been sensitive to this sort of prejudice in the past. Cf. Government of the Virgin Islands v. Oliver, 360 F.2d 297 (C.A. 3, 1966); United States v. Tucker, 267 F.2d 212, 214 (C.A. 3, 1959).

Moreover, stripped of the prejudicial remarks and hearsay, the case, as presented, demanded that the trial court specifically instruct the jury that it must find, as a prerequisite to a finding of guilty, that the defendant knew or should have known he had no right to use the charge card on the two occasions involved in the information. Not only was such instruction not given, but the case was presented on the theory that the crime was complete if the defendant represented himself to be Mr. Cain. At least the prosecutor so presented the matter, and even the majority states that "if the defendant was the user of a credit card that did not belong to him, his wrongful intent would seem inevitable."

The trial judge did not, in his charge, attempt to define the legal issues to the jury, or to present the issues to the jury in terms of the evidence of the case. To the contrary, he simply stated in terms of the applicable law, that if it found the defendant knowingly and designedly by false and fraudulent representation or pretence defrauded any person of property in the value of $100, it must find the defendant guilty; if it did not so find, it should find him not guilty. The court then proceeded to render an instruction on "criminal intent" which, in my opinion, was plainly wrong:

> "Now as to criminal intent. You are instructed that to constitute criminal intent, it is not necessary that there should exist an intent to violate the law or to do a wrong. Criminal intent exists whenever a person intentionally does that which the law declares to be a crime".

This flies in the face of Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). It is immaterial whether the instructions are "wrong" or "ambiguous and confusing". If wrong, we know the jury did not reach its verdict upon a proper application of the law. If ambiguous and confusing, we cannot say that the jury reached its verdict upon a proper application of the law. In either case, the jury verdict cannot stand.

I cannot accept the majority view that "as a whole" the charge passes muster, either with respect to its coverage of the case or the law applicable thereto.

Nor can I subscribe to the majority's view that no reasonable jury could have reached any conclusion other than guilt under the evidence adduced at the trial. The government showed only that Mr. Cain, to whom American Express issued its credit card, missed his card several days after he had used it in San Juan. There was no evidence that the defendant (or even his "friend") was at that place at that time. There was no evidence as to how the defendant came into possession of the card. There is a suggestion (and it was argued to the jury) that the signature on the card was not that of Mr. Cain. Without attempting an analysis of the circumstances which would permit an inference of illegal possession or use, I believe that it is, nevertheless, an inference which only the jury could draw. Undoubtedly, the flight after a later attempt to use the card, in San Juan, suggests guilt, but this does not detract from the fact that a jury, to convict the defendant of the two earlier uses in St. Thomas for which the defendant was on trial, would have to conclude that he obtained the card under circumstances indicating that he knew or should have known that he was not authorized to use it at those times.

For the reasons stated I would reverse the judgment of sentence of the District Court in the interest of justice, and remand the cause with directions to grant a new trial.

Before HASTIE, Chief Judge, and KALODNER, STALEY, FREEDMAN,

SEITZ, VAN DUSEN, ALDISERT and STAHL, Circuit Judges.

## OPINION ON REHEARING

### PER CURIAM.

The immediate result of the rehearing of this appeal before the court en banc was an order remanding the case to the district court with leave to entertain a motion for reduction of sentence. At the same time, we retained jurisdiction of the appeal.

It now appears that the appellant's sentence has been reduced to the time already served and that he has been released from custody.

On the merits of the appeal, the majority of the court are persuaded that the trial errors pointed out by the original hearing panel in its opinions filed July 12, 1968 were not such as to influence the determination of guilt, though they may have resulted in a more severe sentence than otherwise would have been imposed. The properly admitted evidence of guilt was overwhelming and was not significantly rebutted.

Accordingly, on rehearing the judgment of the district court as modified by the subsequent reduction of sentence will be affirmed.

KALODNER, Circuit Judge (dissenting).

I dissent for these reasons:

The sum of the majority's disposition is that there were trial errors but they "were not such as to influence the determination of guilt." Implicit in that determination is a holding that the admitted trial errors were not of a prejudicial dimension requiring a new trial.

I disagree for the reasons stated in my dissent from the panel's opinion filed July 12, 1968. See Walker v. United States, 404 F.2d 900 (5 Cir. 1969); United States v. Guajardo-Melendez, 401 F.2d 35 (7 Cir. 1968), subsequently decided.

STAHL, Circuit Judge, joins in this dissent.

FREEDMAN, Circuit Judge (dissenting).

I agree with Judge KALODNER that our belief in defendant's guilt does not deprive him of the right to a fair trial. Nor is this right lessened because defendant has now been released from prison as a result of the reduction of his sentence by the district court. If he was unfairly convicted he is entitled to a new trial and the Government must establish his guilt beyond a reasonable doubt in a fair proceeding.

I believe the testimony of the FBI agent that defendant refused to make a statement and the opening speech of the prosecutor to the jury, both of which are fully discussed in Judge KALODNER's dissenting panel opinion, constitute reversible error.

I therefore dissent.