**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Pedro Luis PRIETO and Jorge Diaz,**
**Defendants-Appellants.**

**No. 74–1303.**

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1974.

21. *See* note 3, *supra.*

**10**

———◆———

Max P. Engel, Miami, Fla., for Lugo.

Joseph C. Brannen, David B. Javits, Miami, Fla., for Prieto.

Miguel A. Suarez, Miami, Fla., for Diaz.

Robert W. Rust, U. S. Atty., David F. McIntosh, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

Prieto and Diaz appeal from their jury convictions for conspiracy to distribute, distribution, and possession of cocaine with intent to distribute, in violation of 21 U.S.C.A. § 841(a)(1).[1] Both appellants assert that they were convicted on insufficient evidence. Prieto also assigns as error the trial court's denial of a motion to strike the testimony of a government witness which was in some respects inconsistent with his Jencks Act statement, and its failure to grant a mistrial because of certain allegedly prejudicial remarks in the prosecution's opening argument. We affirm.

The operative facts giving rise to these convictions occurred within a span of approximately six hours on July 23, 1973. At 5:00 P.M., Special Agent Aleman, working in an undercover capacity for the Drug Enforcement Administration, picked up Marrero and drove him to a jewelry store where appellant Diaz was employed, negotiating enroute the purchase of one-quarter kilogram of cocaine. After conferring with Diaz, Marrero announced that the deal was set for 7:30 that evening. At 7:00 P.M., Aleman telephoned Marrero and was informed that only an eighth kilogram was available and that the price had gone up. After clearing these changes with his supervisor, Aleman again met Marrero and drove him to the jewelry store for further discussions with Diaz, during which he has given a new telephone number where he could reach Marrero. At 9:55 P.M., Aleman called this number and was instructed to go immediately to the Matador Lounge, where he was met by Marrero and Prieto. About an hour later, following more discussions among the conspirators outside Aleman's presence, the cocaine was delivered in a grassy area of the shopping center in which the lounge was located. Aleman, Marrero, and Prieto then proceeded to an alley some blocks away where the purchase price was paid.

■■■■ The gist of Prieto's sufficiency claim is that the evidence adduced at trial showed only that he was present during the cocaine transaction and was aware that a crime was taking place, but failed to establish his participation as a

---

1. Indictments were also returned against Lugo, who was convicted but dismissed his appeal, and Marrero, who was a fugitive at the time of trial.

conspirator. While this Court has consistently refused to permit an inference of guilt from mere association with a "bad man," *see, e. g.*, United States v. Oliva, 5 Cir. 1974, 497 F.2d 130, 134, we are convinced that Prieto's view of the evidence against him is unduly circumscribed. It was established that while at the Matador, Prieto questioned Aleman about his plans for reselling the drug and at least twice assured him of the quality of the cocaine and that he would not be cheated. Further, Prieto accompanied Aleman and Marrero to transfer the money, helped Marrero count it, and drove him away from the scene. From this, we are fully satisfied that the jury could reasonably conclude that Prieto was not a mere observer but an active member of the conspiracy. *See* United States v. Squella-Avendano, 5 Cir. 1973, 478 F.2d 433, 436–438; United States v. Sidan-Azzam, 5 Cir. 1972, 457 F.2d 1309, 1310.

■■■ Diaz's argument on the sufficiency of the evidence is equally ill-founded. Aleman twice drove Marrero to the jewelry store to discuss the transaction with Diaz; he was also observed with the other conspirators at the Matador Lounge. More damaging was his statement at the second meeting at the jewelry store, when with Aleman present, he responded to Marrero's inquiry concerning delivery by stating, "Lugo will be bringing the stuff over, but I have to call him and make sure that everything is all right." This statement was of course admissible against Diaz. United States v. Apollo, 5 Cir. 1973, 476 F.2d 156, 161; United States v. Rouse, 5 Cir. 1971, 452 F.2d 311, 313. Since this is more than the "slight evidence" necessary to connect Diaz with the conspiracy, United States v. Iacovetti, 5 Cir. 1972, 466 F.2d 1147, 1154, cert. denied 1973, 410 U.S. 908, 93 S.Ct. 963, 35 L.Ed.2d 270, the jury was also entitled to consider the hearsay declarations of other conspirators naming Diaz as the source of the drugs.

■■ Finally, Diaz's argument that his convictions on the substantive counts should be reversed because he was not shown to have had physical possession of the cocaine is patently frivolous. The short answer to this contention is that, as a conspirator, Diaz became responsible for substantive offenses committed in furtherance of the conspiracy whether he personally participated in them or not. United States v. Falco, 5 Cir. 1974, 496 F.2d 1359, 1362; Roberts v. United States, 5 Cir. 1969, 416 F.2d 1216, 1219.

■■■ Appellant Prieto further urges that the trial court erred in denying his motion to strike the testimony of Special Agent Mumfort because of inconsistency between his trial testimony and a composite Jencks Act report furnished to the defense at the beginning of trial. Specifically, he objected to Mumfort's statement that he had observed Lugo, a co-defendant, enter Prieto's car at the Matador Lounge, a fact not contained in the report. In making this argument, Prieto misapprehends the underlying purpose of the Jencks Act, which is solely to enable the defense to impeach a government witness by bringing any such variances to the attention of the jury during cross-examination. Palermo v. United States, 1959, 360 U.S. 343, 349, 79 S.Ct. 1217, 3 L.Ed.2d 1287; United States v. Harris, 5 Cir. 1972, 458 F.2d 670, 677, cert. denied, sub nom. Scott v. United States, 409 U.S. 888, 93 S.Ct. 195, 34 L.Ed.2d 145. This opportunity was fully available to, and exploited by, Prieto's counsel.

■■■ As we stated in Castillo v. United States, 5 Cir. 1969, 409 F.2d 762, 765: "The right to discovery of statements is not a guarantee that the statement is complete in all respects." In the absence of evidence that the omission was the product of deliberate prosecutorial suppression, *see Castillo, supra*, the trial court properly refused to strike the testimony. Mumfort's credibility was a question for the jury. United

States v. Strickland, 5 Cir. 1974, 493 F.2d 182, 186.

 Prieto finally contends that certain allegedly prejudicial remarks in the prosecution's opening argument, primarily two references to the fact that Prieto was armed with a gun during the sale,[2] resulted in a denial of his Sixth Amendment right to confrontation, and that the district court consequently erred in denying his motion for a mistrial. The contested remarks were offered in support of an additional count of the indictment charging Prieto alone with carrying a gun during the commission of a felony, in violation of 18 U.S.C.A. § 924(c)(2); however, at the conclusion of opening argument, the court granted a defense motion to sever this count and to exclude evidence relating to the firearm from the trial.[3] Thus, the statements were proper when made but, due to the court's ruling, could not be substantiated by testimony at trial.

 Good faith on the part of the prosecution is, of course, not the sole measure of the right to confrontation when evidence alluded to in argument does not materialize at trial. The primary focus under such circumstances must be on the impact of the statements in the context of the particular trial. United States v. Hyde, 5 Cir. 1971, 448 F.2d 815, 847, cert. denied, 1972, 404 U.S. 1058, 92 S.Ct. 736, 30 L.Ed.2d 745. In this case, the sufficiency of the evidence against Prieto was not close, the references to the gun were brief and were not touted as a crucial part of the

prosecution's case on the other counts, and defense objections to the statements were promptly sustained. *See* Frazier v. Cupp, 1969, 394 U.S. 731, 736, 89 S.Ct. 1420, 22 L.Ed.2d 684. Consequently, we hold that the trial court acted well within the bounds of its discretion in denying a mistrial. Koran v. United States, 5 Cir. 1969, 408 F.2d 1321, 1325, cert. denied, 1971, 402 U.S. 948, 91 S.Ct. 1603, 29 L.Ed.2d 118.[4]

Affirmed.

---

2. Prieto also takes umbrage at two other misstatements in the prosecution's opening argument. We find them insignificant and clearly harmless. *See* Gurleski v. United States, 5 Cir. 1968, 405 F.2d 253, 265–266, cert. denied, 1969, 395 U.S. 981, 89 S.Ct. 2140, 23 L.Ed.2d 769.

3. The defense initially moved for severance prior to the opening of trial, and the court reserved ruling on the motion at that time. However, the court presaged its ultimate ruling when it sustained a defense objection to the prosecution's remarks concerning the gun.

4. Prieto's alternative argument that the court should have given a further affirmative instruction that the jury should disregard statements referring to the gun is devoid of merit. When his objections to these remarks were sustained, no request was made for any further action from the court. Further, when it severed the firearm count, the court *sua sponte* broached the possibility of a further instruction, but rejected it on the ground that this might only tend to underline the references in the minds of the jury. Again, Prieto's counsel failed to indicate any dissatisfaction with the court's course of action.