UNITED STATES of America

v.

Kenny DeROSA a/k/a Pup, Appellant in No. 76–1642, et al.

**Appeal of Brando ROSETTA, in No. 76–1643.**

Nos. 76–1642, 76–1643.

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1976.

Decided Jan. 11, 1977.

Robert E. J. Curran, U. S. Atty., E. D. Pa., Jerome M. Feit, William C. Brown, Attys., Dept. of Justice, Washington, D. C., for appellee.

John Rogers Carroll, Philadelphia, Pa., for appellant, Kenny DeRosa.

I. Leonard Hoffman, Philadelphia, Pa., for appellant, Brando Rosetta.

Before STALEY,* HUNTER and GARTH, Circuit Judges.

OPINION OF THE COURT

GARTH, Circuit Judge.

The government's opening at the start of a criminal trial which charged both conspir-

---

* Judge Staley was a member of the court as originally constituted, but did not take part in the decision of this case due to illness.

acy and substantive offenses consisted in large part of a verbatim reading of certain wiretap transcripts through which the government claimed that it would prove the five substantive counts against appellant DeRosa. During trial, the wiretap evidence was excluded, and the substantive counts to which they related were dismissed. On appeal both appellants contend that the jury's exposure to the inadmissible wiretap transcripts prejudiced their trial on the conspiracy counts, requiring reversal of their conspiracy convictions. We are gravely disturbed by the government's abuse of the opening procedures; nonetheless, we are convinced by the record as a whole that the convictions must be affirmed.

## I.

Defendants Kenny DeRosa and Brando Rosetta were indicted for having conspired together and with others to import (Count 1) certain controlled drug substances and with conspiring to distribute (Count 2) methamphetamine, one of those substances.[1] In addition, DeRosa was charged in Counts 3 through 7 with using a communication facility (a telephone) to facilitate the distribution of methamphetamine.[2] DeRosa and Rosetta were tried on these charges before a jury in the United States District Court for the Eastern District of Pennsylvania. The principal issue raised in their appeals stems from the statements of the government at the outset of trial.[3]

Jury selection occupied the first day of trial. On the second day, the district court judge opened his remarks to the jury by saying:

> Ladies and gentlemen of the jury panel, what you are going to hear this morning is the opening *outline* of the case of the Government. What you are going to hear counsel tell you when they make opening speeches to you is what the case is about and what they would like you to pay attention to, and what they think is the key part of the case they feel you should be most attentive.

Record at 2–2 (emphasis added).

The government attorney thereafter began his opening statement. First, he referred to the purpose of the opening procedure by stating that that purpose had already been explained by the court. After certain other preliminary remarks, he read Counts 1 and 2 (the conspiracy counts) to the jury.

He then read Count 3 to the jury, and summarized the substance of Counts 4, 5, 6

---

1. Count 1 charged a conspiracy under 21 U.S.C. § 963; Count 2, a conspiracy under 21 U.S.C. § 846.

2. His alleged conduct violated 21 U.S.C. § 843(b), which reads as follows:

   *Communication Facility*

   (b) It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. Each separate use of a communication facility shall be a separate offense under this subsection. For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs, signals, pictures, or sounds of all kinds and includes mail; telephone, wire, radio, and all other means of communication.

3. In their briefs on appeal, the appellants also assert error as follows:

DeRosa contends that the trial court erred in failing to instruct the jury to disregard all evidence of dealing in methaqualone occurring before October 4, 1973 for the reason that methaqualone did not become a controlled substance until that date where the indictment charged conspiracies commencing on June 1, 1972.

Rosetta argues that, as he was charged only with conspiracy to unlawfully import and distribute controlled substances, the government committed fundamental plain error by prejudicial opening statements to the jury with respect to an accusation of an incriminatory admission of guilt by defendant and the threat to commit another uncharged crime which evidence was not offered at trial.

We have considered each of these contentions and conclude in light of the record that they are without merit.

and 7, all of which pertained solely to De-Rosa and charged the substantive offense of using the telephone on different dates to facilitate the distribution of controlled drugs.

He then stated:

That is not evidence. I have not said anything about what the Government's evidence is.

.    .    .    .    .

The Government feels it is very important to outline the case as fully as we can without losing you. I know how that can be sometimes.

I would like to go through the evidence now, and I hope everybody will try to remember it. It may be a week from now when you hear the evidence that I am going to relate to you now.

I would like to take the last counts first of the Indictment pertaining to the use of the telephone by the defendant Kenneth DeRosa. The evidence in this will be that in the fall of 1972 the United States Assistant had obtained a wiretap by a court order. In other words, this is electric surveillances. This was on the telephone where somebody was calling Mr. DeRosa. A court order was obtained and a proper tap was made by a technician of the Secret Service. A tap was on the telephone ordered by the Court, and the monitoring station was being run by agents of the Secret Service, and they will testify to the custody they maintained of them and the long for evidence, and how the transcript for certain calls were prepared.

The machine that is used to operate electric surveillances—the machine used prints out the time of the call. There will be agents from the Drug Enforcement Administration who will identify the voices of certain people. These voices will be identified by agents who have talked to them in the past. They will identify a person by the name of Donald Tedesco, who is named in the Indictment, and they will identify Kenneth DeRosa as one of the speakers in the telephone call.

Now, the first call comes in on October 1, 1972, at 10:52. It was an outgoing call to (215) 534-4758.

Agents which will testify the subject subscriber of the particular number was Kenneth DeRosa of 104 Riverside Avenue, Prospect Park, Pennsylvania.

In this conversation Donald Tedesco asked for Pup, which various people in the trial will testify was the nickname for Kenneth DeRosa.

Record at 2–12 through 2–13. Thereafter, the transcripts were read, word for word. The reading of these transcripts by the government consumed some 22 pages of the trial record. The government's opening as a whole totals 52 pages of the trial record. Hence, almost 50 percent of the time used by the government in its opening was devoted to a verbatim reading of the wiretap transcripts.

Following the reading of these transcripts, and after some cursory explanations concerning the conspiracy charges, the government again read another page and a half of wiretap transcripts involving DeRosa and an informer. This was followed immediately by the government's concluding remarks:

The Government feels that [this last-quoted transcript] is a damaging admission on the part of Mr. DeRosa. He knew he was being investigated and he was trying to keep tabs on who would testify against him.

We feel it is fitting to end our opening statement on that note because we feel that when this proof is offered into evidence, you have heard the live witnesses, and you have heard the wiretap conversations, you will know exactly the type of man that is here and what he has got. We feel we will have met our burden of proof.

Record at 2–55.

At no time did either defense counsel (or the court) interrupt the government's opening or reading of the transcripts. At no time during the opening was an objection made or a sidebar conference requested. At the conclusion of the government's open-

ing, no motion for a mistrial was made. In fact, the only statements made by defense counsel appear in the record as:

Mr. Hoffman [Counsel for Rosetta]: At this time I would like to reserve my opening speech.

Mr. Carroll [Counsel for DeRosa]: The same, sir.

Record at 2–55 through 2–56.

Testimony began the next day. The government presented compelling evidence that the appellants were key links in a methamphetamine distribution network with its source of supply in Canada and its base of operations in and around Philadelphia. One William Ramsey, testified to arranging for the transportation of the drugs from Canada to Philadelphia, while other indicted and unindicted co-conspirators testified as to their roles in the scheme. A pattern emerged: in a typical transaction, DeRosa and Rosetta would arrange to meet with Ramsey and would pay Ramsey for his delivery. The shipment would then be broken down for distribution.

The trial was in its fifth day when the government sought to introduce into evidence the wiretap transcripts which had been read to the jury during the opening. The district judge ruled them inadmissible, because:

[t]he tapes fail to declare any language from which the jury could determine that the narcotics sought to be purchased were illegally imported. In this regard, I don't think a mere expression of possible future wrongdoing is enough to establish [a § 843(b) violation].

Record of November 21, 1975 at 12.[4] The government's case had already been completed as to the conspiracy counts. The ruling that the wiretaps were inadmissible ended presentation of the government's case against DeRosa on the "communication" counts.

Both defendants chose to rest without producing evidence. At an in-chambers hearing, the district court judge announced that he would direct a verdict of not guilty on Counts 3 through 7, the substantive "communication" counts in which DeRosa alone was named as a defendant. Proposed points for charge were then considered by counsel and the court.[5] Finally, it was time for the closing arguments.

The district court judge, in his remarks preliminary to the closing arguments, charged:

You will hear that what the lawyers tell you is not evidence. It is not evidence. It is merely argument.

Record of November 21 at 10. Then, just before the government began its closing statement, defendants' counsel offered their first—and only—reaction to the government's opening made four days earlier. The motion and the court's response are recorded as follows:

MR. CARROLL: May I see you for two seconds?

(The following took place at side bar.)

MR. CARROLL: It's a motion for mistrial on the grounds that the Government ran [sic] in its opening speech at length from wiretaps which the Court has now excluded from evidence, and the jury has heard them from the Government, but they are not in evidence, and I think we are prejudiced by the reading.

MR. HOFFMAN: I join in that motion.

THE COURT: I will deny the motion. Let's go on, please.

(End of side bar discussion.)

*Id.*

The closing argument of the government followed. No mention was made of the wiretaps. Similarly, neither of the defendants' closing arguments referred to or even

---

4. Although the government urges that this ruling was erroneous (and therefore that any error resulting from the jury's premature exposure to the wiretap transcripts should be deemed harmless), in light of our disposition, we do not find it necessary to pass upon the propriety of this ruling.

5. The record is silent as to any request for charge made by defendants respecting the government's recitation of the wiretaps in its opening. The court's charge itself contains no such specific reference.

mentioned the transcripts or the failure of the government to produce in evidence the transcripts which it had promised in its opening. At the conclusion of counsels' arguments, the court gave its charge. In light of its prior rulings, the court's charge concerned only Counts 1 and 2, the conspiracy counts. Toward the conclusion of the court's charge, the jury was told again:

> The evidence that you are here to consider in this trial consists of the sworn testimony of the witnesses, regardless of who may have called them; of all the exhibits received into evidence, regardless of who may have produced them; of all facts that may have been admitted or stipulated by counsel; and of all facts and events that may have been judicially noticed by this Court. That is the evidence; not what counsel argued to you; not what I may recall.

*Id.* at 71–72.

Following that discussion, the court read points for charge requested by the defendants. None of these concerned the wiretap transcripts, and we have not been directed by the defendants to any points for charge requested by them which did so concern wiretap transcripts. At the conclusion of the court's charge, no exceptions were taken by the government, and the exceptions taken by the defendant did not involve either the government's opening or the reading of the wiretap transcripts. In sum, no reference was made, by counsel or the court, to wiretaps, wiretap transcripts or the government's opening.

The jury retired for its deliberations, interrupting them only to make the following significant inquiry to the court:

> Can we take into consideration the telephone conversations read to us by the government lawyers?

*Id.* at 83.[6] The record reveals the following response:

> [THE COURT]: The answer to that is, no.

MR. HOFFMAN: They should disregard.

THE COURT: If you want me to put disregard it, I will say that.

MR. CARROLL: I think it would be helpful if Your Honor said to disregard it entirely.

THE COURT: I can do that also.

*Id.*

The jury, told to ignore the wiretaps, went on to convict both defendants on both conspiracy counts.

Subsequent to their trial and conviction, motions for a new trial based upon the improprieties in the government's opening were denied. On April 22, 1976, the defendants were sentenced to identical terms of imprisonment of five years, to be followed by special parole of five years on each count, with the sentences to run concurrently. This appeal· followed.

## II.

Once again we are obliged to turn our attention to the issue of prosecutorial misconduct in the context of an improper opening statement. *See United States v. Somers,* 496 F.2d 723, 736–39 (3d Cir.), *cert. denied,* 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. Leftwich,* 461 F.2d 586, 590 (3d Cir. 1972) *cert. denied,* 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178 (1972); *United States v. Turner,* 409 F.2d 102, 103–04 (3d Cir. 1969). While we would have thought that our prior instruction would have obviated the need for still further discourse, apparently such is not the case.

In *Somers,* we expressed our disapproval of prosecutorial improprieties as they there appeared in the context of both opening and closing statements. We expressed our concern that a "few injudicious words uttered in the heat of battle by an Assistant United States Attorney" could jeopardize an entire trial and months of investigation and pre-trial preparation. *See United*

---

6. The jury also sent out a question relating to the identity and involvement in the conspiracy of one of the government's witnesses. *See* Record of November 21 at 82–83.

*States v. White,* 486 F.2d 204 (2d Cir. 1973), *quoted in Somers, supra,* 496 F.2d at 742.

█ Here the government's opening consisted of far more than "a few injudicious words" and cannot be excused as occurring in "heat of the battle," for the "battle" on the merits had yet to be joined. There can be no question but that the government's opening statement, which could have and should have been prepared in advance of trial in accordance with trial and professional disciplines (*see Somers, supra,* at 742), needlessly jeopardized a trial which was to run for six days. This Court has constantly and continuously emphasized that

A United States attorney in a criminal case has an even greater responsibility than counsel for an individual client. For the purpose of the individual case he represents the great authority of the United States and he must exercise that responsibility with the circumspection and dignity the occasion calls for.

*United States v. LeFevre,* 483 F.2d 477, 478 (3d Cir. 1973).

█ Here, the overzealous attempt by the government to expose to the jury materials to which the jury should not have been exposed at that stage of the trial, and the manner of the government's exposition can hardly be called an exercise of that responsibility which we require of the United States. Rather, this case presents still another example of needless prosecutorial overkill which this Court has been constantly forced to review.

The time and place for commenting on materials of evidence, for detailing that evidence, for reading verbatim from transcripts admitted in evidence and for hitting hard but always fairly, *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), is during summation—the closing argument. That is the time—*not* during the opening—to focus the jury's attention on the trial evidence and the inferences to be drawn therefrom. What gave rise to this appeal was the govern-

ment's misconception and abuse of the differing functions of these two trial stages.

█ To forestall any further repetition of such transgressions in the future, we repeat once again that

[t]he purpose of an opening [statement] is to give the broad outlines of the case to enable the jury to comprehend it. It is not to poison the jury's mind against the defendant, and it is certainly not to recite items of highly questionable evidence.

*Government of Virgin Islands v. Turner, supra,* 409 F.2d at 103, *quoted in part in United States v. Somers, supra,* 496 F.2d at 737. *Cf. Government of Virgin Islands v. Oliver,* 360 F.2d 297 (3d Cir. 1966). Nor should an opening statement contain unnecessary, overly dramatic characterizations. *See United States v. Somers, supra,* 496 F.2d at 738 ("We categorically disapprove of remarks which serve only to color subjectively the minds of the jury at the outset of the trial.") As one commentator observes:

In [the opening statement], the prosecutor explains the nature of the charge, outlines succinctly the supportive evidence which he expects to prove, and identifies the issues. Basically, the purpose of the opening statement is to program the jurors so that they can follow and understand the evidence as it unfolds during the trial. It is not the office of an opening statement to argue the merits of the case, to discuss the pertinent law, [or] *to recite* the anticipated testimony or other evidence *at length and in detail.* . .

C. Torcia, ed., 3 *Wharton's Criminal Procedure,* § 493 (12 ed. 1975), at 377–78 (emphasis added) (footnotes deleted). For an excellent discussion of the purpose and content of an opening statement, *see State v. Burruell,* 98 Ariz. 37, 401 P.2d 733 (1965).

These principles necessarily lead to the conclusion that the opening statement is to be limited to a general statement of facts which are intended or expected to be proved. An opening statement is not designed to be an evidentiary recitation which minutely describes in detail, rather than

generally outlines or foreshadows, the testimony to be produced.[7]

Recently, Chief Justice Burger offered the following description of the opening statement:

An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.

*United States v. Dinitz,* 424 U.S. 600, 612, 96 S.Ct. 1075, 1082, 47 L.Ed.2d 267 (1976) (concurring opinion).

Having summarized once again the appropriate scope and content of an opening statement, it is apparent to us that the challenged opening statement of the government, measured against these criteria, was clearly improper.

■ That determination, however, does not end our inquiry, for, as we observed in *Somers:*

Considerations of judicial administration . . . . preclude us from reversing every time that we find adversarial improprieties. As this Court has recognized, trials are "rarely, if ever, perfect." *United States v. Leftwich,* 461 F.2d 586, 590 (3d Cir.), *cert. denied,* 409 U.S. 915, 93 S.Ct. 247, 34 L.Ed.2d 178 (1972). Given our primary concern with the fairness of the procedure, we will reverse upon demonstrations of prosecutorial misconduct only in those situations in which prejudice inures to the defendant from the challenged improprieties. *See Frazier v. Cupp,* 394 U.S. 731, 736, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

496 F.2d at 737. Thus we must look to the circumstances attending the trial in this case to ascertain whether by reason of the government's detailed recitation of wiretap transcripts which ultimately were excluded from evidence,[8] the defendants were prejudiced to the extent that a new trial must be ordered. As was said in *United States v. Prieto,* 505 F.2d 8, 12 (5th Cir. 1974): "The primary focus under such circumstances must be the impact of the statements in the context of the particular trial." We therefore turn to the record before us.[9]

### III.

■ We begin by noting that the government's reading of the wiretap transcripts during its opening went unchallenged by appellants' counsel.[10] Neither defendant

---

7. We are not concerned here with materials which were stipulated or marked in evidence prior to trial. Even in such a circumstance, we would expect that those materials would be generally described and not particularized in the opening statement. In such a case, the proper level of specificity rests within the sound discretion of the district court judge.

8. *See United States v. Stone,* 472 F.2d 909, 914 (5th Cir. 1973).

9. The government urges on appeal that its misconduct should be excused because of a reasonable expectation that the wiretaps could be introduced. As the Court of Appeals for the Fifth Circuit has observed, however, "Good faith on the part of the prosecution is, of course, not the sole measure of the right to confrontation when evidence alluded to in argument does not materialize at trial." *United States v. Prieto, supra,* 505 F.2d at 12.

10. At oral argument appellants' counsel explained that they made no objection to the government's opening because they too believed that the wiretaps or the transcripts would be admitted into evidence when offered by the government. *Compare* note 7 *supra.* We find this explanation unrealistic, particularly when advanced by seasoned and experienced trial counsel. At the least, the attention of the district court should have been drawn to the obvious impropriety of the United States Attorney's verbatim reading of transcripts to the jury when the transcripts were not yet in evidence. We have little doubt but that an objection made by counsel or a registering of counsel's concern to the court in a sidebar conference, would have resulted in an appropriate

raised an objection, either during or after the government's opening. As we observed in *United States v. Somers, supra:*

> [R]equiring immediate objections to improprieties in openings serves the dual purpose of forestalling further improprieties and 'curing' improper remarks while the remarks are still fresh in the minds of the jurors.

496 F.2d at 738 n.28.

A timely objection also serves the purpose of permitting curative actions to be taken at the very outset of the trial rather than just before the trial's conclusion. In this case, had the defendants moved for a mistrial just after the government's opening, rather than waiting until before the government's closing, and had that motion been granted, five days of trial and testimony could have been saved.

Not only did the defendants fail to object during and after the government's opening, but at no time during the trial did either of them ever seek the curative instruction from the court to which they would have been entitled. *See United States ex rel. Perry v. Mulligan,* 544 F.2d 674 (3d Cir. 1976). Significantly, just as the defendants chose not to comment on the government's opening by waiving their own opening

statements, they similarly did not refer to the wiretap transcripts in their closing arguments to the jury—even by way of pointing out the government's failure to produce the promised transcripts as evidence for jury consideration.

Moreover, as we have previously noted with respect to the court's final charge, *see* page 468 *supra,* the defendants failed to request any charge pertaining to the government's opening or to the wiretap transcripts. Nor did the defendants except to the court's charge in these particulars. Their failure to react to the government's opening, either by objection or by seeking curative charges, is a strong indication that they did not sense prejudice. In ignoring this entire subject in their summations they provide further evidence of their lack of concern that the government's reading of the transcripts pertaining to the substantive counts would affect the jury's determinations on the conspiracy counts.

With these considerations in mind, we cannot say that the district court judge abused his discretion in denying the defendants' motion for mistrial.[11] It must be remembered that this ruling (1) was made after five days of defense counsels' inaction with respect to the government's opening;[12] (2) occurred after the dismissal

---

directive from the court which would have brought the prosecutor back onto a proper course. Such a directive would have been indicated even if the materials being read had been ultimately accepted in evidence. In the circumstances presented, it would not have been inappropriate for the district court judge to have interrupted the government *sua sponte, see United States v. LeFevre,* 483 F.2d 477, 480 (3d Cir. 1973), although in view of the experience of trial counsel we can understand a district judge's reluctance to upset what he might well have deemed to be a designed trial strategy. Nevertheless, this Court's instruction in *LeFevre, supra,* pertaining to prosecutorial statements about facts not in evidence bears repetition:

> Since such comments have the clear potential of adversely affecting the defendant's right to a fair trial, the judge should take prompt action to correct them without relying upon defense counsel to object. The court should then take such corrective action either in or out of the presence of the jury as

seems most appropriate in each individual instance.

483 F.2d at 480. *See also Leonard v. United States,* 277 F.2d 834, 841 (9th Cir. 1960).

11. *See, e.g., United States v. Lubertazzi,* 283 F.2d 152, 155 (3d Cir. 1960).

12. We reject the defendants' contention that the doctrine of plain error requires reversal of their convictions. While plain error is a concept "appellate courts find impossible to define save that they know it when they see it," *United States v. Bamberger,* 456 F.2d 1119, 1131, n.9 (3d Cir. 1972), *cert. denied* 406 U.S. 969, 92 S.Ct. 2424, 32 L.Ed.2d 668 (1972), it has been equated by this Court to error giving rise to a "manifest miscarriage of justice," *United States v. Grasso,* 437 F.2d 317, 319 (3d Cir. 1970), *cert. denied,* 403 U.S. 920, 91 S.Ct. 2236, 29 L.Ed.2d 698 (1971), or error of a constitutional dimension, *United States v. Bamberger, supra.*

As appears in our discussion *infra,* we recognize that the conduct of government counsel was improper, but on this record we can per-

of the substantive counts (counts 3 through 7) to which the offending transcripts related; (3) and was prior to the jury's deliberations when the court instructed the jurors as to the difference between argument and evidence.

In this connection, we should emphasize that the district court judge, in denying the defendants' motion for mistrial, was not ruling upon a case which involved offending material bearing upon the offenses charged. Here, as we have observed, the wiretap transcripts were read to the jury during the government's opening *only* in support of the substantive indictments in which the defendant DeRosa was named,[13] and which had already been dismissed by the court.

■ At that stage of the trial, we cannot say that the district court judge erred in denying the defendants' motion. On a motion for mistrial, the district court's inquiry, as is ours, is properly focused on the possibility of prejudice to the defendant. *United States v. Carney,* 461 F.2d 465, 467–68 (3d Cir. 1972). Whatever prejudice had been injected into the trial by the reading of the wiretap transcripts had been almost wholly dissipated by the court's dismissal of the substantive counts to which the transcripts related. However, if doubt remained as to whether any prejudice to the defendants could still inure by reason of the government's opening, that doubt is dispelled by the jury's inquiry specifically directed to that issue.

■ We need not speculate on whether the wiretap information was taken into consideration by the jury despite the district court's general admonition to consider only evidence and not argument. During its deliberations, the jury perceptively asked:

> Can we take into consideration the telephone conversations read to us by the government's lawyers?

Record of November 21 at 83. The court adopted the defendants' answer to that question:

> [THE COURT]: The answer to that is, no.
>
> MR. HOFFMAN: They should disregard.
>
> THE COURT: If you want me to put disregard it, I will say that.
>
> MR. CARROLL: I think it would be helpful if Your Honor said to disregard it entirely.
>
> THE COURT: I can do that also.

*Id.*

The jury's question and the court's response as structured by defense counsel dissipated whatever residue of prejudice may have remained and cured any deficiency in the court's charge as respects the wiretap transcripts. We are satisfied that the jury did not consider and was not influenced by the transcripts improperly read during the government's opening.

We conclude that the jury's verdict was not influenced by the government's opening, and that therefore no prejudice inured to the defendants from the challenged improprieties. *See United States v. Somers, supra,* 496 F.2d at 737.

We are satisfied, therefore, as was the district court, that the defendants' guilt on the conspiracy counts was clearly established by competent evidence untainted by the government's opening, and that the district court judge did not abuse his discretion in denying a mistrial. Accordingly, we sustain the convictions. The judgment of the district court will be affirmed.

---

ceive no error constituting a "manifest miscarriage of justice" or rising to constitutional dimension.

**13.** Although both defendants have raised, as their primary issue on appeal, the impropriety committed by the government during its opening, it should be noted that the defendant Ro-

setta was not named as a defendant in counts 3 through 7. Rosetta was only charged and convicted on counts 1 and 2, the conspiracy counts.