## UNITED STATES of America, Plaintiff–Appellee,

v.

## Kirk BROCKINGTON, Defendant–Appellant.

### No. 87–5600.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1988.

Decided June 17, 1988.

---

Beth M. Farber, Asst. Federal Public Defender (Fred Warren Bennett, Federal Public Defender, on brief) for defendant-appellant.

Katharine J. Armentrout, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty.; Annabelle Lisic, Third Year Law Student, on brief) for plaintiff-appellee.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

Kirk Brockington challenges his conviction by a jury on drug and firearm related charges. He makes two claims on appeal. First, that he was unfairly prejudiced by the prosecutor's reference in opening argument to evidence later held inadmissible. Second, that the district court's jury instruction relating to the charged violation

of 18 U.S.C. § 924(c)(1), allowed the jury to convict him on less than sufficient evidence to establish the crime. We reject these contentions and affirm.

## I

During an investigation by the DEA into drug trafficking in the Baltimore area, DEA agents learned that Brockington was involved in distributing narcotics. DEA agents subsequently obtained a warrant to search Brockington's place of residence, which belonged to his parents. During the search, the agents found a plastic bag containing 12.2 grams of pure cocaine and 12 glassine bags of pure heroin all hidden in a boot in a closet of the front upstairs bedroom. Items seized from the same room apparently identified the bedroom as that of Brockington.

An arrest warrant was issued for Brockington and he was subsequently arrested as he was riding in a taxi in Northwest Baltimore. A search of Brockington's person incident to the arrest yielded two vials containing cocaine and nine glassine bags containing heroin. The arresting officers also recovered a fully-loaded .380 semi-automatic pistol from under the floormat directly beneath Brockington's seat in the cab. After his arrest Brockington acknowledged his involvement with drug dealing and that he carried the gun for protection.

Brockington was charged in a three-count indictment. Count I charged him with the possession of a controlled substance with intent to distribute, to wit the drugs seized from his bedroom, in violation of 21 U.S.C. § 841(a)(1). Count II charged him with the same crime in relation to the drugs seized from his person at the time of his arrest, Count III charged him with carrying a firearm during and in relation to a crime of drug trafficking in violation of 18 U.S.C. § 924(c)(1). An additional Count IV was charged in a superseding indictment and alleged that Brockington violated 18 U.S.C. § 922(g)(1) which proscribes possession of a firearm by a convicted felon. Count IV was severed prior to trial.

The jury found Brockington guilty on all three remaining counts and after sentencing the government dismissed Count IV of the superseding indictment.

This appeal followed.

## II

As part of its case, the prosecution intended to introduce some of the pictures seized from Brockington's home. One of those pictures depicted Brockington wearing gold jewelry including a chain with a Mercedes Benz emblem. This picture was relevant to the prosecution's attempt to link Brockington to a Mercedes Benz allegedly purchased on his behalf at a time when he was unemployed. The car contained two cellular phones, which the prosecution further theorized were used to conduct Brockington's drug business. The prosecution also wanted to introduce testimony from a law enforcement officer that the jewelry worn by Brockington was consistent with the mode of a drug dealer. The district court ultimately allowed admission of the photo on the first ground, but disallowed any testimony linking drug dealers to certain jewelry.

In her opening statement, the prosecutor made the following reference to the disputed photograph:

Special Agent Johnson will testify that he then went down the stairs, and in the dining room, he found a number of large photograph albums. You'll see those photograph albums and you'll see two pictures in particular taken from those photograph albums, pictures of the Defendant, Kirk Brockington. In one of them, he's posing rather statesmanlike with—with very heavy gold jewelry hung around his neck, the kind that Special Agent Johnson will testify [is] specifically worn by drug dealers.

Defense counsel did not object to the statement at the time, but later objected to the admission of the photograph and the testimony linking drug dealers and certain kinds of jewelry. Defense counsel apparently did not request any curative instructions, though the court *sua sponte,* at both the beginning and end of the trial, warned

the jury that the statements of counsel are not evidence.

The test for reversible prosecutorial misconduct generally has two components: that "(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985) (citations omitted); *see also United States v. Harrison*, 716 F.2d 1050 (4th Cir.1983).

■ The prosecutor's opening statement should be an objective summary of the evidence reasonably expected to be produced, *United States v. Wright–Barker*, 784 F.2d 161, 175 (3d Cir.1986), and the prosecutor should not use the opening statement as an opportunity to " 'poison the jury's mind against the defendant' " or " 'to recite items of highly questionable evidence.' " *United States v. DeRosa*, 548 F.2d 464, 470 (3d Cir.1977) (quoting *Government of Virgin Islands v. Turner*, 409 F.2d 102, 103 (3d Cir.1969)); *see also Hernandez*, 779 F.2d at 459 (prosecutor's reference to evidence of which admissibility was seriously in question was improper). Guided by this standard, we believe that the prosecutor's remark here was improper. While we do not imply that the prosecutor's conduct evidences bad faith, we believe that the admissibility of the predicated evidence was sufficiently questionable that it was unreasonable to refer to it prior to receiving a favorable ruling from the district court.

■ Even assuming that the prosecutor's conduct was improper, reversal is not warranted unless the defendant has been unfairly prejudiced by the conduct. Whether the defendant has suffered prejudice in this context depends on the facts of each case and review must examine the conduct in the context of the entire proceeding. Three factors in particular have been identified as relevant: (1) whether the remarks were pronounced and persistent, creating a likelihood that the remarks would mislead the jury to the prejudice of the defendant, (2) the strength of the prop-erly admitted evidence against the defendant, and (3) the curative actions taken by the district court. Considering these factors, we do not believe reversal was warranted.

First, the comment at issue was an isolated remark. After the court's ruling, the prosecutor did not make any reference to the inference to be drawn from the defendant's jewelry. Second, the case against Brockington on the drug related charges was strong. The amount, purity and packaging of the drugs seized would support an inference that the defendant possessed the narcotics with the intent to distribute them. Also, there was evidence that Brockington carried a beeper and owned or used an expensive car with two cellular mobile phones, devices which testimony indicated were typically used by narcotics dealers to operate their business.

Finally, the district court repeatedly warned that counsel's statements were not evidence and that the case was to be decided solely on the evidence. Though no more detailed curative instruction was given, none was requested. As noted above, defense counsel did not object to the remark at the time it was made, and, other than notifying the court during consideration of the relevancy of the photograph that the comment was made, appears not to have addressed the remark at all. This apparent conscious ignorance on the subject is a strong indication that the defense did not sense prejudice. *DeRosa*, 548 F.2d at 472.

## III

■ Brockington next challenges the district court's giving of the following charge related to Count III:

> Now, to establish the third element, the Government must prove beyond a reasonable doubt that the firearm had some relation to or some connection to the underlying crime. A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself or make an escape possible.

Brockington requested the following instruction on the same element:

This third element requires additional comment. In order to find Mr. Brockington guilty of carrying a firearm, you must find that he carried the firearm "during and in relation to" the drug trafficking crime. That requirement is not met in a situation where the presence of the firearm played no part in the crime. Therefore, to sustain a conviction, the government must prove beyond a reasonable doubt that the firearm carried here had some relation or connection to the underlying crime.

Brockington specifically objects to the specific examples used by the district court to explain the "in relation" language of 18 U.S.C. § 924(c)(1). In essence, Brockington's challenge is that the district court's instruction allowed the jury to convict him on a more attenuated "relation" than was intended by Congress under § 924(c)(1) as amended in 1984.

But the court's charge is explicitly supported in the Senate Report that describes the 1984 amendment to § 924(c)(1) which added the "in relation" language:

Evidence that the defendant had a gun in his pocket but did not display it, or refer to it, could nevertheless support a conviction for "carrying" a firearm in relation to the crime if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape.

H.R.Rep. No. 98–225, 98th Cong., 2d Sess. 314 n. 10 (1983), *reprinted in* 1984 U.S. Code Cong. & Ad. News 3182, 3492 n. 10. And the sparse case law on § 924(c)(1) and its predecessor, (proscribing "unlawful carrying" of a firearm "during" commission of a felony), also indicates that it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used. *See, e.g., United States v. Stewart,* 779 F.2d 538, 540 (9th Cir.1985) (conviction under § 924(c)(1) could be based on circumstances showing "that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportu-

nity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred....").

 We believe that there was sufficient evidence for the jury to conclude that Brockington possessed the drugs seized incident to his arrest with the intent to distribute them, and indeed, was in the process of conducting his illegal trade. This evidence, coupled with the common sense recognition that drug dealing is a dangerous and often violent enterprise, *see Stewart,* 779 F.2d at 539 (acknowledging "the known risks of conducting an illegal drug business"), more than supports an inference that Brockington carried the weapon to facilitate his "business."

AFFIRMED.