875 F.2d 317
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark JOHNSON, Defendant-Appellant.
 No. 88-5630.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1989.
Decided May 1, 1989.
 
 George F. Fordham for appellant.
 David Earl Godwin (William A. Kolibash, United States Attorney, Robert H. McWilliams, Assistant United States Attorney on brief) for appellee.
 Before DONALD RUSSELL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Mark Johnson appeals from a jury conviction for three counts of distributing "crack" cocaine within 1000 feet of a school in violation of 21 U.S.C. Secs. 841(a)(1) & 845a(a). Concluding that Johnson's various challenges are without merit, we affirm.
 
 
 2
 The government's first witness, Corporal Deborah DiFalco, who identified Johnson as the seller in the subject drug transactions, had arrested Johnson for a previous offense and had seen him numerous times in the courthouse in connection with that offense. To thwart Johnson's expected defenses of alibi and mistaken identity, the prosecutor remarked in his opening statement that "Corporal DiFalco knows Mark Johnson very well."
 
 
 3
 She has been nose to nose with him in 1986. She has seen him in this courtroom numerous times. And as a result of the incidents of 1986, not only was she very familiar with him, but so was Agent Griffith [another government witness].
 
 
 4
 At the close of the prosecutor's opening statement, Johnson's attorney objected to the comments as prejudicial. The court noted the objection and, with slight elaboration, instructed the jury that opening statements are not evidence. Johnson's attorney did not object further.
 
 
 5
 When Corporal DiFalco testified, the prosecution's questioning included:
 
 
 6
 Q. Now, did you know Mark Johnson before this?
 
 
 7
 A. Yes.
 
 
 8
 Q. And before this incident, how close have you been to [him] physically?
 
 
 9
 A. Face to face. Closer than I am here today.
 
 
 10
 Q. Within feet?
 
 
 11
 A. Within arm's reach.
 
 
 12
 Q. And have you seen him on more than one occasion?
 
 
 13
 A. Yes, sir, I have.
 
 
 14
 Q. How many times would you estimate you have seen him?
 
 
 15
 A. Oh, six or seven times.
 
 
 16
 Q. Have you seen him in this building?
 
 
 17
 A. Yes, I have.
 
 
 18
 Before the prosecutor could ask the next question, the court instructed the jury that they
 
 
 19
 must not attribute anything to the fact that [Johnson was seen] in [the courthouse]. It is a public building. People can come, people can be subpoenaed as jurors, people can be subpoenaed as witnesses. Nothing special about it, assuming that you accept the statement in the first place.
 
 
 20
 Johnson now argues that the prosecutor's comments during the opening statement and the responses elicited during Corporal DiFalco's direct examination impermissibly placed his character in issue. According to Johnson, the challenged statements violate Federal Rule of Evidence 404(b), which allows evidence of other crimes or misconduct only if it is relevant to one of the exceptions, such as proof of motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 21
 We recently considered a similar argument, concluding that even if the prosecutor's conduct were improper, reversal is not warranted unless the defendant has been unfairly prejudiced by the conduct. United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988). Because determining whether the defendant was prejudiced by the conduct is a factual inquiry, we must examine the challenged "conduct in the context of the entire proceeding," paying particular attention to the following factors: "(1) whether the remarks were pronounced and persistent, creating a likelihood that the remarks would mislead the jury to the prejudice of the defendant, (2) the strength of the properly admitted evidence against the defendant, and (3) the curative actions taken by the district court." Id. Johnson's challenges here do not survive scrutiny under this standard. First, the challenged statements were not "pronounced and persistent" and were unlikely to mislead the jury to Johnson's prejudice. The statements were isolated and imbedded within many other unchallenged remarks. Second, the other evidence against Johnson--on each count consisting of testimony by at least one state trooper and a cooperating informant--was sufficiently strong. And, third, the court's curative instructions, which arguably could have been stronger at the close of the prosecutor's opening argument, adequately served to cure any unfairness to Johnson. See United States v. Moore, 710 F.2d 157, 159 (4th Cir.1983). In short, we are convinced that these facts do not warrant reversal of Johnson's conviction. Further supporting this conclusion is the fact that Johnson failed to move in timely fashion for a mistrial in the district court. See United States v. Rhodes, 779 F.2d 1019, 1030 (4th Cir.1985).
 
 II
 
 22
 Johnson next challenges the district court's mid-trial denial of his motion for a continuance to conduct discovery on the benefits received by a paid informant-witness. A party seeking a continuance generally must show that a delay is necessary for a just determination of the case. United States v. Clinger, 681 F.2d 221, 223 (4th Cir.1982). While we have recognized the importance of revealing the identity of an informant prior to trial so that the defense can conduct an independent investigation of the informant's background, see United States v. Price, 783 F.2d 1132 (4th Cir.1986), the informant's identity in this case was revealed--even if only the night before trial, as Johnson contends. Moreover, Price dealt with an informant who did not testify and was thus unavailable for cross-examination. Here the informant testified and was cross-examined by the defense about the benefits he received as a paid informant. Perhaps Johnson would have liked more specific information, i.e., what the informant received for the specific transactions concerning this case rather than what he received generally, but the jury was fully advised that the informant was paid for his participation and information--the general grounds for impeachment. Therefore, based on the informant's availability for cross-examination and Johnson's failure pretrial--even if only the night before trial--to request the information for which he later sought the continuance, we conclude that the district court's denial of Johnson's motion for a continuance was not an abuse of discretion.
 
 III
 
 23
 Johnson also argues that the district court erroneously denied his motion for acquittal at the close of all the evidence. Viewing the evidence in the light most favorable to the government, however, it is clear that the district court properly submitted the case to the jury. See Burks v. United States, 437 U.S. 1, 16-17 (1978). With respect to all counts of the indictment, the conduct constituting the offense was testified to by the informant and at least one undercover police officer who was already familiar with Johnson. They testified that they witnessed--either passively or as active participants--Johnson sell "crack." On this point, Johnson charges that the government failed to prove that the substance conveyed in the transactions was "crack." While the government did not introduce the substance into evidence, Johnson and the government had earlier orally stipulated--a stipulation accepted by the district court--that the government's exhibits, the "crack" turned over by the government informant after the subject transactions, were crack cocaine. Moreover, even without the stipulation, there was sufficient evidence offered at trial to identify the substance as crack. As we have previously held, "lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identify [sic] of the substance involved in an alleged narcotics transaction." United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir.1976). In this case, such circumstantial proof included evidence of the physical appearance of the substance, testimony that a high price was paid in cash for the substance, evidence that the transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal substance by the defendant or others in his presence. See id. (outlining various types of probative circumstantial proof). We are convinced that this proof adequately supports a jury finding that the substance involved in the transactions was in fact crack cocaine.
 
 IV
 
 24
 Finding Johnson's final argument that the government failed to prove he had the specific intent to distribute the illegal substance equally without merit, we affirm.
 
 
 25
 AFFIRMED.