991 F.2d 792
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jessie Lee SEBASTIAN, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
James Richard Flynn, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Thomas Michael Scearce, Defendant-Appellant.
 Nos. 92-5195, 92-5375, 92-5376.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1993
Decided: April 19, 1993
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., District Judge.
 William C. Ingram, Jr., FLOYD, ALLEN & JACOBS, for Appellant Flynn; William Lindsay Osteen, Jr., ADAMS & OSTEEN, for Appellant Scearce; John W. Totten, II, for Appellant Sebastian.
 Lisa Blue Boggs, Assistant United States Attorney, for Appellee.
 A. Wayne Harrison, HARRISON, NORTH, COOKE & LANDRETH, for Appellant Scearce. Robert H. Edmunds, Jr., United States Attorney, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and LUTTIG, Circuit Judges, and MACKENZIE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Jessie Lee Sebastian ("Sebastian"), James Richard Flynn ("Flynn"), and Thomas Michael Scearce ("Scearce") appeal from convictions of two drug and firearm offenses. They contend that the evidence presented at trial was insufficient to support their convictions. We hold that ample evidence supported the jury's verdict and therefore affirm.
 
 I.
 
 2
 In March, 1991, law enforcement officials in Alamance County, North Carolina enlisted the help of Barry Clapp ("Clapp") in an investigation of Sebastian's suspected drug trafficking. J.A. 22-25. Clapp had known Sebastian and Flynn for about eighteen months and met with them every two to four months. Clapp did not know Scearce. Pursuant to police officers' requests, Clapp called Sebastian twice on May 31, 1991 to arrange a cocaine purchase. Id . Both conversations were taped by police. See J.A. 364-70. Flynn answered the telephone on both occasions and turned the phone over to Sebastian, who discussed with Clapp the amount of cocaine to be purchased, the cost, and the amount the drugs would be "cut", or diluted. Scearce did not take part in any of these conversations, nor did any party mention Scearce's name. Id. No drug sale occurred on May 31, 1991; the parties delayed the transaction until a later date.
 
 
 3
 On June 3, 1991, Sebastian called Clapp and notified him that he was ready to proceed with the drug sale at a car wash in Glen Raven, North Carolina. J.A. 31. Clapp relayed this information to Detective Dean Ward ("Ward"). Ward and other detectives then met with Clapp to plan the sting operation that was to take place at the car wash and to wire Clapp's vehicle with a transmitter. The officers then set up surveillance at the car wash. J.A. 32. Later, Clapp paged Ward and told him that he was leaving for car wash.
 
 
 4
 Shortly after Clapp's call, a Chevrolet Blazer drove into one of the stalls of the car wash. Gary Lynn Wood ("Wood") was driving the Blazer and Sebastian was in the front passenger seat. Scearce and Flynn were seated behind Wood and Sebastian respectively. J.A. 3335. Clapp arrived in his own vehicle just after the Blazer arrived, and he parked in an adjacent stall. Clapp then exited his vehicle and stood next to it. Sebastian also exited the Blazer and walked toward Clapp. J.A. 125-26. Sebastian handed Clapp a bag of white powder, which Clapp examined and tossed into the front seat of his car. J.A. 126, 149-50. At that point, Clapp touched his hat, a prearranged signal to the police officers that he had seen cocaine, upon which the police officers moved in on the Blazer and Clapp's vehicle. J.A. 126. Sebastian had in his hand the corners of two plastic sandwich bags that were filled with a white powder. Sebastian indicated to the arresting officer that the substance in the bags was "just cutter". J.A. 160. Later analysis revealed that the substance was indeed Inositol, a substance commonly used to cut cocaine. J.A. 155-58.
 
 
 5
 Simultaneously with Sebastian's arrest, the other officers moved in on the Blazer and ordered the occupants to put up their hands. As he approached the Blazer, Ward noticed that Scearce appeared to be putting something behind the seat. J.A. 35. Because the vehicle had only two doors, Ward removed Wood and searched him for weapons while Scearce waited in the back seat. Detective Ron Florence ("Florence"), who was behind Ward, noticed Scearce reaching toward the floorboard of the car. J.A. 35, 190. After removing Scearce from the vehicle and searching him, the officers searched the Blazer and discovered two plastic bags filled with cocaine in the area behind Scearce and a .22 caliber pistol in plain view on the floorboard near where Scearce had been reaching. Scearce admitted ownership of the gun. J.A. 45, 190. In the middle of the back seat was a paper bag containing $4,280 in cash. The officers also found a bottle of Inositol in a zipper compartment on Flynn's side and found a sandwich bag with the corners removed on Flynn's person. Testimony at trial established that sandwich bag corners are commonly used in the drug trade to store cutting agent and cocaine. J.A. 176.
 
 
 6
 Wood, Sebastian, Flynn, and Scearce were indicted for possession of cocaine with the intent to distribute in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C.s 2, and possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1) and 2. The government dropped the charges against Wood before trial. At trial, the prosecution asserted that all three defendants were responsible for the drugs and the weapon on a theory of constructive possession. The defendants offered no defense, relying instead on the argument that there was insufficient evidence of constructive possession of the gun and the drugs. They were convicted on all counts of the indictment and now appeal.
 
 II.
 
 7
 The sole question raised by this appeal is whether the evidence introduced at trial supports a finding of constructive possession of the firearm and the drugs with respect to each defendant. " '[T]o establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed.' " United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) (quoting United States v. Ferg, 504 F.2d 914, 916-17 (5th Cir. 1974)). In reviewing a conviction for sufficiency of the evidence, the appellate court views the evidence offered at trial and all reasonable inferences in the light most favorable to the prosecution, United States v. Jones, 735 F.2d 785, 790 (4th Cir.), cert. denied, 469 U.S. 918 (1984), disturbing the verdict only if no rational jury could have found that the prosecution proved the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In arguing that the evidence of constructive possession was insufficient to support their convictions, the appellants rely almost exclusively on Blue, in which this court reversed a firearm conviction for insufficient evidence of constructive possession. 957 F.2d at 108. Because review of a conviction for sufficiency of the evidence is necessarily a fact-driven analysis, a review of the facts in Blue is helpful in resolving this issue.
 
 
 8
 Blue arose from a North Carolina police officer's surveillance of a house in Durham, North Carolina for suspected drug activity. Id. at 106-07. The officer saw two men leave the house and enter a car. As the two men drove past the officer's car, the officer claimed to notice that they were not wearing seatbelts, a violation of North Carolina law. Accordingly, he followed them until they entered a well-lit area and stopped the vehicle to investigate the alleged seatbelt violation. Id. at 107.
 
 
 9
 The officer claimed that as he approached the car, he saw Blue, who was sitting in the front passenger seat, dip his right shoulder in a manner consistent with reaching under the seat with his right hand. Id. A search of the car revealed a .38 caliber pistol under the car's passenger seat, and Blue was indicted for being a convicted felon in possession of a firearm. Id. At trial, the government relied on a theory of constructive possession and offered as evidence only the officer's testimony that Blue had dipped his shoulder and the fact that the weapon was found under the passenger seat where Blue had been sitting. Id. at 107-08. The prosecution offered no fingerprints or physical evidence, nor did it introduce testimony that Blue had been seen with the gun or other evidence of ownership. Id. at 108. Also, Blue did not own the car in which the weapon was found and the United States introduced no evidence that he had ever been in the car before. Id. This court reversed Blue's conviction, concluding"that the facts of this case fall outside, but just barely, the realm of the quantum of evidence necessary to support a finding of constructive possession." Id. (citations omitted).
 
 
 10
 Turning to the case at hand, we conclude that the evidence with respect to each defendant in this case make it readily distinguishable from Blue. There is substantial evidence linking each of the defendants to the drugs and the pistol.
 
 A.
 
 11
 Flynn challenges both his drug and firearm convictions. He contends that his part in the telephone conversations, combined with his proximity to the gun and the drugs, is insufficient to support his conviction. We disagree.
 
 
 12
 Admittedly, Flynn's participation in the telephone conversations was minimal; he only answered the telephone and turned it over to Sebastian. However, the cryptic nature of one of the conversations with Clapp could lead a jury to infer that he was involved in the drug transaction as at least a minimal participant.[1] Furthermore, Flynn was seated in the back of the Blazer with a substantial amount of both drugs and money at his side. He also possessed a plastic sandwich bag with the corners cut off, and police testimony established that sandwich bag corners are commonly used in the drug trade to store cocaine and cutting agent. In fact, Sebastian, who was clearly involved in the distribution scheme by virtue of his conversations with Clapp, possessed cutting agent in two such corners. Thus, ample circumstantial evidence existed from which the jury could have inferred that Flynn was involved with the distribution of the cocaine, if not as a principal, then as an aider and abetter.
 
 
 13
 The weapon was also within Flynn's plain view and reach on the floorboard of the Blazer. That fact is sufficient to give rise to the inference that Flynn had dominion and control over the weapon despite Scearce's admission of ownership. Moreover, the drugs and money were in Flynn's plain view and the police apprehended the Blazer acting on the basis of the telephone conversation in which Clapp arranged the drug transaction with Sebastian. Those facts allowed the jury to infer that the purpose of the firearm's presence was to facilitate the drug transaction. See United States v. MunozFabela, 896 F.2d 908, 911 (5th Cir.), cert. denied, 498 U.S. 824 (1990).
 
 B.
 
 14
 Sebastian appeals only the firearm conviction. Although Sebastian was in the front seat of the Blazer and the weapon was on the back floorboard, sufficient evidence exists to support a finding that Sebastian was in constructive possession of the weapon. Sebastian arranged the drug transaction and the weapon, although in the back seat, was still within his view and reach. Thus, sufficient evidence existed from which the jury could infer that Sebastian had constructive possession of the weapon, fully expecting that it would be used to facilitate the drug transaction. Cf. United States v. White, 875 F.2d 427, 433 (4th Cir. 1989) (upholding sentence enhancement for possession of firearm when defendant was seated in front passenger seat and weapon was under driver's seat).
 
 C.
 
 15
 Scearce appeals both the drug and firearm convictions. Having admitted ownership of the weapon, he offers a creative theory to excuse him from criminal liability, contending that there is insufficient evidence to link him with the drugs, mandating reversal of the drug count. Reversal of the drug conviction would, in turn, mandate reversal of the firearm count, as 18 U.S.C § 924(c)(1) requires that the firearm be used in a drug trafficking crime. However, ample evidence supports the inference that Scearce was in constructive possession of the drugs. The fact that the drugs and a bag of money were in plain view makes it highly unlikely that Scearce was simply "along for the ride." In fact, a more reasonable inference would be that Scearce was participating in the transaction either as a guard or in some other capacity. The evidence was more than sufficient to sustain his convictions on both the drug and firearm counts. See id.
 
 III.
 
 16
 If the evidence in Blue was just outside"the realm of the quantum of evidence necessary to support a finding of constructive possession", 957 F.2d at 108, this evidence falls well inside that realm, for it goes far beyond the conjectural evidence introduced in Blue. Also, there was ample evidence from which the jury could conclude that the weapon was "present for protection and to facilitate the likelihood of [the drug venture's] success." United States v. Brockington, 849 F.2d 872, 876 (4th Cir. 1988). Therefore, we affirm the convictions of all defendants with regard to both the drug and firearm offenses.[2]
 
 AFFIRMED
 
 
 [1]
 Flynn's part in the conversation follows:
 FLYNN: Hello.
 CLAPP: Hey Jimmy.
 FLYNN: Yeah.
 CLAPP: Did ya'll hear anything about that?
 FLYNN: Hold on.
 J.A. at 366. Sebastian then comes on the line and arranges the drug transaction with Clapp. Id.
 
 
 [2]
 In light of this disposition, we need not resolve the dispute raised by the parties in their briefs over whether each defendant is liable for the other defendants' possession of the drugs and the handgun under the doctrine enunciated in Pinkerton v. United States, 328 U.S. 640 (1946)