21 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Avery W. VIAL, Defendant-Appellant.
 No. 92-5814.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 9, 1993.
Decided: April 8, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-92-64-CR-5)
 Thomas Courtland Manning, CHesire, Parker, Hughes & Manning, Raleigh, North Carolina, for Appellant.
 David Paul Folmar, Jr., Assistant United States Attorney, Raleigh, North Carolina, for Appellee.
 Richard Noel Gusler, Chesire, Parker, Hughes & Manning, Raleigh, North Carolina, for Appellant.
 Margaret Person Currin, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before RUSSELL and LUTTIG, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Avery W. Vial was indicted, with others, on charges of conspiracy to possess with intent to distribute cocaine, and possession of a firearm in connection with that conspiracy. He was convicted of both counts and sentenced to a period of incarceration of 157 months. He now appeals the district court's decision to deny his motion for acquittal on the firearms charge, the finding that he was a managersupervisor during the conspiracy, and the finding that certain misdemeanor convictions should be counted in determining his criminal history category. We find the evidence sufficient to support the jury's verdict and the district court's denial of the motion for acquittal. We affirm on all issues.
 
 I.
 
 2
 At trial, the government presented testimony from the codefendants who had pled guilty to the charges in the indictment at an earlier time, and from police officers who set up buys. The witnesses established that the defendant had financed and participated in a number of trips from North Carolina to New York to obtain cocaine, bringing back between three and twelve ounces per trip.
 
 
 3
 In May, 1992, through an informant, Special Agent Chris Jackson contacted codefendant Vincent Devita to conduct a sale. The parties met at Appleby's Restaurant in Raleigh, North Carolina. Devita met the agents at a table and the defendant Vial sat at the bar, several feet away and facing the table. They talked about the business of selling car engines and motors, to disguise the actual dealings. Mr. Jackson eventually agreed to provide a kilogram of cocaine for $18,000, with the details to be worked out by phone between Devita and the informant Joe.
 
 
 4
 The next day, arrangements were made to conduct the deal at the Hampton Inn. Devita and Vial contacted a number of friends to help them come up with enough money to make the buy, reaching Jerome Belford in Florida who promised to be there with enough money. Agent Jackson got set up at the Hampton Inn and waited until late evening when Devita finally arrived with the money from Belford and others.
 
 
 5
 Devita arrived in Avery Vial's truck, contacted Jackson's room with his cellular phone, took out his gun, left it in the truck, and went into the hotel. Vial put the gun in the console next to his seat, with his own gun, and moved the truck into the far corner of the parking lot facing the entrance and, fortuitously, right next to a van belonging to the surveillance team. After Devita turned over the money, Agent Jackson telephoned Joe to tell him to give Vial the cocaine. As they left the hotel room, Devita was arrested, and the other teams arrested Vial, Belford, and others who were participating. Vial's truck was searched by Detective Coleman, who found two forty-five caliber magazines, a forty-five caliber automatic and a thirty-eight caliber in the console, to the right of the driver's seat.
 
 
 6
 Mr. Vial denied purchasing drugs on the trips to New York, denied participating in the deal, stated that he was only giving Devita a ride to the Hampton Inn and denied using drugs. He testified that he kept the gun in his truck for protection, since he had been shot in 1974, and that the short straws found in his truck were used to make weep holes in caulking, as part of his window and vinyl siding business.
 
 II.
 
 7
 A jury verdict must be sustained if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). The relevant question is whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Circumstantial as well as direct evidence is considered, and the government is given the benefit of all reasonable inferences from the facts established to those sought to be proven. Tresvant, 677 F.2d at 1021. In resolving issues of substantial evidence, this Court does not weigh evidence or review witness credibility. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Furthermore circumstantial evidence need not exclude every reasonable hypothesis of innocence. United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir.1989).
 
 III.
 
 8
 Vial argues that the conviction under 18 U.S.C.Sec. 924 should be overturned because he did not "use or carry" a gun in relation to a drug trafficking offense. He admits, as he must, that his own fortyfive caliber automatic, with ammunition, was in the console right next to his seat. He had carried it there for a number of years, and had knowledge of its existence and proximity. He knew that Devita had left his own gun in the truck, and in fact, had placed that gun in the console himself. He also knew that Devita was about to purchase a substantial amount of drugs.
 
 
 9
 Vial stayed in the truck, as close as possible to the weapons without actually handling them, and parked facing the Hampton Inn so he could watch Devita's exit, and track his path through the parking lot. The jury was entitled to believe that the guns were available for protection during a drug deal. "A firearm can be used in relation to a felony involving the drug trafficking, if the person possessing it intended to use the gun as a contingency arose, for example, to protect himself, or make escape possible." United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988). It is sufficient if the firearm was "present for protection and to facilitate the likelihood of success, whether or not it is actually used." Id. at 876.
 
 
 10
 The evidence that Vial had the gun readily accessible during what he knew to be a drug deal was sufficient to lead any rational jury to conclude that the weapon was present for protection and to facilitate success in drug trafficking. We therefore affirm the conviction.
 
 IV.
 
 11
 At sentencing, pursuant to U.S.S.G. Sec. 3B1.1(b), the district court increased Vial's offense level by three points after finding that he was a manager or supervisor during the offense. Such a determination is factual, and subject to the "clearly erroneous" standard of review. United States v. Barsanti, 943 F.2d 428, 439 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1474 (1992). The defendant argues that such an increase was error, because he had not actually participated in any of the discussions or planning with Agent Jackson and that Devita had the predominant role.
 
 
 12
 The district court had heard the trial testimony that Vial had a longterm relationship with Devita, whom he knew to be a drug dealer; that he was present at the Appleby's restaurant meeting in a countersurveillance capacity, carrying a gun; that he helped finance the drug purchases and had a group of buyers for whom he wanted to purchase an additional kilogram of cocaine after he had tested Agent Jackson's supply. During the undercover deal on May 7, 1992, he provided transportation, directions and a mobile office to continue negotiations and to stall Jackson until Belford could arrive. He also was ready to provide protection and a get away vehicle for Devita after the deal. While his role may not have been as prominent as Devita's, it is possible to conclude on this evidence that Avery Vial was a manager or supervisor of a major part of this conspiracy. We are not persuaded that this factual determination was clearly erroneous.
 
 V.
 
 13
 Vial's final argument is that the district court erred in including two misdemeanor convictions in the Wake County District Court in 1983 when it calculated his criminal history category for sentencing purposes.
 
 
 14
 The first conviction was for the offense of reckless driving after consuming alcohol, and the second was for resisting a police officer in a domestic dispute. Apparently, the records of the Wake County Circuit Clerk's office had been computerized, with the hard copy destroyed, and, for his presentence report, the probation officer relied on the computer printout. The record seems to indicate that the defendant received unsupervised probation for both convictions.* The defendant introduced a letter from the attorney who had represented him on both of these charges who stated that, to the best of his recollection, Vial was not given an active sentence in either case, nor was he placed on probation of any sort.
 
 
 15
 The district court found the computer printout to be a business record with the requisite indicia of trustworthiness and rejected the attorney's letter. Given the nature of the charges, and the fact that the defendant was found guilty, it seems unlikely that he received no sentence at all, and therefore, the district court's finding that Mr. Vial was placed on unsupervised probation on both charges is not "clearly erroneous." United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991).
 
 
 16
 The defendant argues that even if he received unsupervised probation on these charges, such probation is the equivalent of a "suspended sentence" which is not counted in a criminal history as a "sentence of imprisonment," United States v. McCrary, 887 F.2d 485 (4th Cir.1989), because the defendant must have actually served a period of imprisonment. The defendant makes an interesting argument that a sentence of unsupervised probation reveals less culpable or reprehensible conduct than a suspended sentence. The McCrary court, however, was determining whether the defendant should receive the extra two or three points for a "sentence of imprisonment" under U.S.S.G. Sec. 4A1.1(a) or (b). Suspended sentences are counted, together with all other sentences that do not impose imprisonment, as a one point increase under U.S.S.G. Sec. 4A1.1(c). Under U.S.S.G. Sec. 4A1.2(c)(1), sentences for certain misdemeanors, such as Vial's, are counted if the sentence was a term of probation of at least one year. U.S.S.G. Sec. 4A1.2(c)(1). There is no differentiation between supervised and unsupervised probation, and this Court is not persuaded that such a difference should be inferred. The sentences of probation for these misdemeanors were properly counted to calculate the defendant's criminal history.
 
 CONCLUSION
 
 17
 We therefore affirm the jury verdict as to the charge of a firearm during drug trafficking, and affirm the district court's findings regarding the sentencing guidelines, as to both the manager/supervisor enhancement and the criminal history category.
 
 AFFIRMED
 
 
 *
 The government argues in its brief that, on the reckless driving conviction, the defendant received a sentence of six months in custody, one year unsupervised release, and was required to attend drug and alcohol school, citing page 798 of the joint appendix. There is no such page and the record does not contain evidence of such a sentence, which would obviously be countable under U.S.S.G. Sec. 4A1.2(b)(1)