39 F.3d 1178
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Drew Howard BRINSON, Defendant-Appellant.
 No. 93-5815.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 26, 1994.
Decided: October 27, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Orangeburg. Charles E. Simons, Jr., Senior District Judge. (CR-92-387)
 John D. (Jay) Elliott, Columbia, South Carolina, for Appellant.
 J.Preston Strom, Jr., United States Attorney, Terry L. Wooten, Assistant United States Attorney, Columbia, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before WILKINSON and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Drew Howard Brinson appeals his convictions for armed bank robbery and use of a firearm during the commission of that offense. Finding no error, we affirm.
 
 I.
 
 2
 On July 11, 1991, two masked men brandishing firearms robbed the Santee Cooper State Bank of South Carolina of $8860. One of the robbers pointed his gun at a teller and threatened to kill "you and your families." At least two tellers placed dye packs and bait money in bags which the robbers took.
 
 
 3
 The robbers made their way to Savannah, Georgia, where they visited the Waving Girl Lounge on the night of July 15, 1991. Several of the dancers at that establishment testified. One identified Brinson as one of two white males who entered the bar at approximately 11p.m. She remembered them because of the amount of money they spent and what they said. The men referred to themselves as Frank and Jesse James and informed the dancer that they robbed banks. They told her that they had robbed a bank in South Carolina. According to the dancer, the men tipped her more than $500. Some of the money was stained with red dye.
 
 
 4
 Another dancer also testified that the men tipped her $200. Some of the money she received also was stained. She deposited the money in her savings account. A teller at her bank suspected the stained money to have been stolen. Upon investigation, the money proved to be some of the bait money stolen on July 11.
 
 
 5
 Tellers from two other banks identified Brinson as one of two men who robbed their respective banks after the Santee Cooper robbery.
 
 
 6
 The pattern in the two other robberies was similar to that of the Santee Cooper robbery: the men "cased" the bank prior to the robbery; they wore masks; and they were armed with weapons similar to those used in the Santee Cooper robbery.
 
 
 7
 Brinson confessed to an FBI agent on September 13, 1991, that he and his brother had committed the Santee Cooper State Bank robbery. He again confessed to the robbery when he was interviewed by another law enforcement officer on October 9, 1991.
 
 II.
 
 8
 Brinson claims on appeal that the prosecutor committed reversible error during closing argument. This Court has devised a two-part test for determining whether a prosecutor's remarks constitute reversible error. First, the remark must have been improper. Second, the remarks must have so prejudicially affected the defendant's substantial rights that the defendant was deprived of a fair trial. United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988). We consider four factors when deciding whether an improper remark meets the requisite level of prejudice:
 
 
 9
 (1) whether the remarks were pronounced and persistent, creating a likelihood that the remarks would mislead the jury to the prejudice of the defendant, (2) the strength of the properly admitted evidence against the defendant, and (3)the curative actions taken by the district court.
 
 
 10
 Id.
 
 
 11
 In the instant case, two of the remarks objected to were proper. We therefore do not reach the question of prejudice. The first remark was counsel's statement that the evidence revealed Brinson to be a "real criminal" and a "violent offender." We reject the contention that these phrases could only cause the jury to convict Brinson because of his character, not his crimes. Instead, the description was a fair summary of the nature of the offenses, especially given the fact that the robbers were armed and apparently fully able to carry out the threat to kill. See United States v. Pupo, 841 F.2d 1235, 1240 (4th Cir.), cert. denied, 488 U.S. 842 (1988). Counsel's statement that Brinson was asking for the "gift" of acquittal was merely a permissible embellishment of the obvious: by pleading not guilty, Brinson was asking that the jury acquit him.
 
 
 12
 Brinson also complains about the prosecutor's statement that defense counsel "talked about several things but not one time did he ever say, 'Drew Brinson, my client, is not guilty.' He never said it. He never said that." Stating--or implying--that defense counsel knows his client to be guilty has been termed "clearly improper." United States v. Kirkland, 637 F.2d 654, 656 (9th Cir.1980). However, given the strong curative instruction given by the district court and the overwhelming evidence, including two confessions, against Brinson, we conclude that the statement did not prejudice Brinson's substantial rights. See United States v. Brockington, 849 F.2d at 875.
 
 III.
 
 13
 We conclude that none of the prosecutor's remarks about which Brinson complains constituted reversible error. Accordingly, we affirm the convictions. As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 AFFIRMED