62 F.3d 1415
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
David ELIJAH SMITH, a/k/a David Jones, a/k/a Michael Knight,
a/k/a Jerry Lee Brown, a/k/a Miami Dave,
Defendant-Appellant.
 No. 94-5531.
 United States Court of Appeals, Fourth Circuit.
 Aug. 4, 1995.
 
 Wayne James Payne, Powell & Payne, Raleigh, NC, for appellant.
 William Arthur Webb, Asst. U.S. Atty., Janice McKenzie Cole, U.S. Atty., on the brief, Raleigh, NC, for appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 David Elijah Smith appeals his convictions and sentence for several drug-related crimes. We affirm.
 
 I.
 
 2
 The government's evidence at trial tended to prove that Smith, a/k/a Miami Dave, sold crack cocaine for a living out of a house in Wilmington, North Carolina, where he often stayed with his girlfriend, Denise Waddell, and her three children. Smith provided Waddell with crack, and used part of the proceeds from his drug business to pay the rent and household expenses.
 
 
 3
 On November 13, 1992, Smith and Waddell returned home from a football game and encountered another crack dealer, John McGhee, talking with some people across the street. McGhee paused long enough to direct an unflattering remark at the couple as they passed by. As soon as Smith got inside, he retrieved a Raven .25 caliber semi-automatic pistol, went back outside, and shot McGhee in the shoulder; when McGhee fell, Smith beat him with the pistol. One of McGhee's friends picked him up and took him to the hospital.
 
 
 4
 Smith left in his car, but returned on foot about an hour later. Before leaving again, he told Waddell where his car was and instructed her to drive it to her mother's house and park it. A day or two later, Waddell went to see Smith, who was hiding out at his exgirlfriend's residence, to tell him that the police were looking for him; Waddell persuaded Smith to go down to the station with her.
 
 
 5
 While Smith was being interrogated, the police obtained Waddell's consent to search her house. The search turned up the pistol, con cealed in the fold of a black leather jacket. The jacket had been placed on top of a chest in Sam Waddell's bedroom.[1]
 
 
 6
 Smith was arrested, but he was released on bond approximately ten days later, on or about November 25. On December 13, 1992, the police received a tip that Smith was driving around town selling drugs. Wilmington police officers stopped Smith and found a rock of crack in his shoe and a .25 caliber bullet in the car. The police then obtained a search warrant for Waddell's house and executed it, discovering some "woolies" (crack-laced cigarettes) and assorted paraphernalia for manufacturing and smoking crack. In a box of clothing in an upstairs bedroom, the police found a loaded .380 semi-automatic handgun.
 
 
 7
 Smith was indicted,[2] and, during a motions hearing on December 8, 1993, advised the district court that he wished to discharge his appointed lawyer and proceed pro se; the court granted the request. A week later, Smith appeared before a different district judge to plead guilty, pursuant to an agreement with the government, to the single count of violating 18 U.S.C. Sec. 922(g), see note 2, supra. During the course of its Rule 11 inquiry, the court informed Smith that he could be sentenced to as much as ten years for the offense.[3] Smith responded that he had expected to be sentenced to a maximum of five years, and he told the court that he wished to proceed to trial.
 
 
 8
 Trial was had. With minimal assistance from standby counsel, Smith represented himself. The jury convicted Smith on six counts.[4] The district court sentenced Smith, whose criminal history was determined to be Category VI, to 660 months imprisonment. Smith appeals his convictions and sentence.
 
 II.
 
 9
 In receiving a sentence five-and-one-half times as long as he might have had he accepted the government's plea offer, Smith has paid a steep, if not exorbitant, price for his lack of sophistication in dealing with the legal system. Smith's inexperience continues to exact a heavy toll on appeal. Although Smith asserts that his trial and sentencing were riddled with error, our review of most of the myriad of points that Smith has raised in his brief is limited to plain error, see United States v. Olano, 113 S.Ct. 1770 (1993), because he failed to properly present his objections to the district court in the first instance. We have considered all of the contentions that Smith has voiced for the first time on appeal, and we are satisfied that the district court committed no plain error during either trial or sentencing.
 
 III.
 
 10
 Most of the properly preserved issues on appeal relate to whether the trial evidence was sufficient to sustain the six counts of conviction. See note 2, supra. We believe that it was.
 
 
 11
 Denise Waddell testified extensively regarding the details of Smith's drug operation. She said that she had met Smith in June 1992; after Smith moved in with her, he supported them both by using her residence to manufacture and sell crack. According to Ms. Waddell, Smith sold fifteen to fifty rocks of crack cocaine "[j]ust about every day."
 
 
 12
 Sam Waddell testified that Smith had twice asked him to sell crack. The first time, Sam was paid twenty dollars to deliver one hundred dollars' worth of crack to Richard DeBose. Later, Smith gave Sam another two hundred dollars' worth of crack to sell, but Sam returned it unsold.
 
 
 13
 DeBose corroborated Sam's testimony that Smith had used Sam as a courier, and, on cross-examination, added that he had purchased crack from Smith "three or four times." DeBose also explained how Smith had obtained the Raven .25; he testified that the gun had belonged to him, but that he had--about two or three weeks before Smith shot McGhee--traded it outright to Smith for fifty dollars' worth of crack.[5] DeBose's testimony, in conjunction with that of Denise and Sam Waddell, was more than sufficient to allow the jury to conclude that Smith had possessed crack cocaine with the intent to distribute it, that he had maintained Ms. Waddell's dwelling for the purpose of manufacturing, distributing, and using crack, and that he had employed Sam Waddell to deliver crack for him.
 
 
 14
 The evidence supporting the gun charges was also quite sufficient. That Smith actually possessed the Raven .25 is beyond question. Debose, as did Denise and Sam Waddell, testified as to Smith's possession, and McGhee related the shooting incident; a forensics expert testified that the gun matched a shell casing found at the scene.[6] In addition, Denise and Sam each testified that the .380 belonged to Smith. In light of the evidence of Smith's drug dealing, the jury could easily infer that Smith possessed both guns in order to facilitate his drug business and to protect himself from buyers or other dealers. See United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). Such an inference is sufficient to establish the required nexus between the firearm possession and drug trafficking elements of Sec. 924(c). See id.
 
 
 15
 Although Smith concedes that the evidence was sufficient to support the statutory elements of the felon-in-possession conviction, he maintains that his civil rights had been restored by the time of the shooting.[7] No more than a cursory review of the record is required to demonstrate otherwise. The predicate offense established at trial by the government was Smith's 1989 state conviction for "assault with a deadly weapon causing serious injury." Because state law prohibits the restoration of rights for at least five years following such a conviction, see N.C. Gen.Stat. Sec. 14-415.1(a) (Michie 1994), Smith's rights could not have been restored at the time he shot McGhee. Smith nevertheless insists that it is legal in North Carolina for even a convicted felon whose rights have not been restored to possess a firearm within his home. See id. What Smith fails to appreciate, of course, is that, when he shot McGhee, the gun was outside--not within--his home.
 
 
 16
 Smith testified that he was innocent of all the charges against him; at bottom, he objects to having been convicted by the contrary testimony of the government's witnesses. As we have held countless times, however, credibility determinations are the exclusive province of the factfinder. See, e.g., United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). That the jury accords more weight to the testimony of the government's witnesses than to that offered by the defendant does not render the evidence, when viewed in the light most favorable to the government, see Glasser v. United States, 315 U.S. 60, 80 (1942), insufficient to sustain a conviction.
 
 IV.
 
 17
 Smith's arguments in support of his contention that he was improperly sentenced need not detain us long. The district court's finding that Smith's offense level should be enhanced two points under USSG Sec. 3B1.1 for being a "manager" of a criminal activity involving 2-4 participants is not clearly erroneous,[8] inasmuch as DeBose and Sam Waddell testified that they were involved in Smith's drug dealing.
 
 
 18
 Likewise, the court did not commit clear error in calculating Smith's offense level by attributing to him 110.7 grams of crack. Denise Waddell testified that Smith sold from fifteen to fifty crack rocks just about every day, and information obtained by the probation officer--to which Smith did not object--revealed that the average weight of such rocks is about two-tenths of a gram. The indictment charged that Smith sold drugs out of Denise Waddell's house from November 1 until December 13, 1992. The indictment period was thus forty-three days in duration, but, as Smith points out, he was in jail for ten of those days as a result of shooting McGhee.
 
 
 19
 Even if we were to give Smith the complete benefit of the doubt, and assume that he only sold fifteen rocks (three grams) of crack per day for thirty days, he would have been responsible for distributing ninety grams. The district court, however, was not required to draw all factual inferences in Smith's favor; thus, its attribution to him of only an additional twenty-odd grams was not clearly erroneous.
 
 
 20
 Finally, Smith asserts that the Guidelines do not sufficiently distinguish cocaine base from powdered cocaine; thus, we must apply the rule of lenity and direct the district court to resentence him as if he had distributed cocaine powder. We have recently rejected an identical argument in another case. See United States v. Fisher, No. 94-5563, 1995 WL 377367, at * 2-* 3 (4th Cir. June 27, 1995).
 
 
 21
 Smith's convictions and sentence are affirmed.
 
 AFFIRMED
 
 
 [1]
 Sam is Denise Waddell's younger son, and he was thirteen years old at the time. Denise testified that the jacket belonged to Sam, but that Smith often wore it
 
 
 [2]
 Smith was ultimately tried on seven counts. He was charged with violating 21 U.S.C. Sec. 841(a)(1) (two counts of possessing cocaine base with intent to distribute), 18 U.S.C. Sec. 924(c) (two counts of possessing a firearm during and in relation to a drug trafficking offense), 18 U.S.C. Sec. 922(g) (being a convicted felon in illegal possession of a firearm), 21 U.S.C. Sec. 856 (maintaining a dwelling for the purpose of manufacturing, distributing, and using cocaine base), and 21 U.S.C. Sec. 861 (employing a minor--Sam Waddell--to possess cocaine base with intent to distribute)
 
 
 [3]
 See 18 U.S.C. Sec. 924(a)(2) ("Whoever knowingly violates subsection ... (g) ... of section 922 shall be ... imprisoned not more than ten years....")
 
 
 [4]
 The jury acquitted Smith of a single count of possession of crack with intent to distribute, which stemmed from his arrest by a nighttime police patrol about three months before the shooting
 
 
 [5]
 On cross-examination, DeBose admitted that he had actually given the gun to Smith as collateral for an existing drug debt. Smith contends that this admission "proves" that DeBose's testimony was perjured. Of course, all the inconsistency really proves is that Smith's crossexamination was, to a degree, effective. Inconsistencies in a witness's trial testimony are not uncommon; when they occur, it is up to the jury to decide whether all or part of the witness's testimony is nevertheless credible
 
 
 [6]
 Smith asserts that all evidence of the shooting incident should have been excluded under Fed.R.Evid. 404(b) as being improper character evidence. The law in this circuit is that evidence of past crimes, wrongs, or "bad acts" may be admitted if offered for any reason other than to prove a character trait of the person involved. See Sparks v. Gilley Trucking Co., Inc., 992 F.2d 50, 52 (4th Cir.1993) (404(b) is a "rule of inclusion"). Because the evidence was admitted for the purpose of proving that Smith possessed the Raven .25, his argument that the evidence should have instead been excluded must fail
 
 
 [7]
 See United States v. Essick, 935 F.2d 28, 31 (4th Cir.1991) (to obtain a conviction for a Section 922(g) violation, the government must prove, as an essential element of the offense, that the offender's civil rights have not been restored under state law)
 
 
 [8]
 We review the district court's factual findings respecting the application of the Guidelines for clear error. See United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989)